VIKRAM H. KAJI AND ANDREA L. KAJI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kaji v. Commissioner
Docket No. 16769-81.
United States Tax Court
T.C. Memo 1985-341; 1985 Tax Ct. Memo LEXIS 287; 50 T.C.M. (CCH) 392; T.C.M. (RIA) 85341; July 15, 1985. *287 P invests in a coal tax shelter where he signs a "Mining Lease," which is actually a sublease, affording P the option of paying the $67,500 royalty specified either by cash or a nonrecourse note. P simultaneously enters into a "Contract for the Sale of Coal" with C, giving a nonrecourse note to C in exchange for funds C made available to P, which P then turned over to lessor. No coal was mined or produced under the foregoing lease during 1977. Held, minimum royalty provision in sec. 1.612-3(b)(3), Income Tax Regs., is valid following Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd, sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), and Wing v. Commissioner,81 T.C. 17 (1983). Held further, advanced royalties petitioner "paid" in 1977 are not deductible because no coal was ever produced in 1977 and the royalties were not paid pursuant to a valid minimum royalty provision as provided in sec. 1.612-3(b)(3), Income Tax Regs.
Held Further, damages are awarded under sec. 6673, I.R.C. 1954, for maintaining a groundless and frivolous claim. *288 John Patrick Kelly, for the petitioners. John O. Kent, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined a deficiency of $33,892 in petitioners' 1977 Federal income *289 tax. The issues presented for consideration are: (1) Whether petitioners are entitled to deduct certain claimed "advanced minimum royalties" under section 1.612-3(b)(3), Income Tax Regs., and (2) whether damages should be awarded under section 6673. [1]
FINDINGS OF FACT All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners, Vikram H. Kaji and Andrea L. Kaji, resided in Yardley, Pennsylvania, at the time they filed the petition in this case. Petitioners filed their 1977 joint Federal income tax return with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On their return, petitioners described their occupations as "physician" and "nurse" and deducted royalties in the amount of $67,500 on Schedule C as lessees of a coal mine. References to petitioner in the singular will be to Vikram H. Kaji. This case presents the now-familiar coal lease shelter with a minumum annual royalty payment, most of which *290 is "paid" by means of a nonrecourse note exclusively payable from mining receipts. On December 30, 1977, petitioner entered into a coal lease with Wyoming and Western Coal Reserves, Inc. (WW), which lease gave petitioner the right to mine merchantable coal at a specific location in Wyoming. In consideration for entering into the "Mining Lease," petitioner agreed to pay WW a $1,000 lease deposit and a minimum annual royalty payment of $67,500.The minimum annual royalty was to be paid out of the amount received from coal sold or mined, removed and marketed. In addition to the "Mining Lease," petitioner entered into an "Addendum to Mining Lease" with WW. Pursuant to the Addendum, petitioner, as lessee, was given the option of paying the minimum annual royalties provided in the lease either by cash or nonrecourse note. If payment by note was desired, then the Addendum provided that petitioner was to pay WW on this nonrecourse note from all coal mined from the leased premises in excess of 54,000 tons. Total balance of principal and interest was due and payable on December 31, 1997. Petitioner paid one-quarter ($16,875) of the 1977 "minimum annual royalty payment" with his own check *291 dated "December 6, 1977." Petitioner then borrowed the remaining amount ($51,625, which includes the $1,000 lease deposit) from Coal & Minerals Leasing & Development Corporation (CM). In exchange for petitioner's nonrecourse promissory note, CM issued a check to petitioner, which petitioner negotiated to WW pursuant to an "Authorization to Negotiate." Petitioner simultaneously entered into a "Contract for the Sale of Coal" with CM under which petitioner agreed to sell economically recoverable coal reserves to CM. Payment under the contract was to be made on December 31, 1987. However, CM was granted the right to extend this payment date until December 31, 1997. Payments of principal and interest prior to December 31, 1987, were to be made exclusively from receipts of coal mined, removed, and marketed. The contract also provided that as additional inducement for petitioner's entering into this contract, CM agreed to lend petitioner $51,625 to be repaid under the terms of the above promissory note and further agreed to lend another $50,625 to petitioner in 1978. The transactional documents executed by petitioner, including the "Mining Lease," the "Addendum to Mining Lease," the *292 "Non-Recourse Promissory Note," the "Authorization to Negotiate" and the "Contract for the Sale of Coal," appear to be part of a preprinted promotional package. No coal was mined or sold on the property petitioner leased during the year 1977. On their joint 1977 income tax return, petitioners attached a Schedule C for petitioner's coal mining business and claimed a deduction of $67,500 for 1977 as a minimum royalty with respect to the WW lease. Respondent, in his notice of deficiency, disallowed petitioner's claimed coal mining deduction in full. OPINION With the exception of the amounts "invested," the factual pattern in this case is identical to those in Oneal v. Commissioner, 84 T.C.     (June 4, 1985); Ward v. Commissioner,T.C. Memo. 1984-570 (On appeal, 9th Cir., Jan. 14, 1985); Thompson v. Commissioner,T.C. Memo. 1984-337; and Walls v. Commissioner,T.C. Memo. 1983-504. In fact, in all these prior cases and this case, similar arrangements were entered into with the same Wyoming and Western Coal Reserves, Inc., and with the same Coal & Minerals Leasing & Development Corporation. The only differences are the amounts *293 involved and minor variations in some detail. The documents executed by petitioner in this case are identical to those set forth in Oneal,Ward,Thompson, and Walls, even down to the numbering of the paragraphs. We held in those cases that the deduction claimed as "advanced mineral royalties" was not allowable under the amended provisions of section 1.612-3(b)(3), Income Tax Regs., because no coal was produced in the relevant year. This Court and two circuit courts of appeal have upheld the validity of amended section 1.612-3(b)(3), Income Tax Regs.Wendland v. Commissioner,739 F.2d 580 (11th Cir. 1984); Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); Wing v. Commissioner,81 T.C. 17 (1983); Wendland v. Commissioner,79 T.C. 355 (1982), affd. 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). Petitioners attack the validity of the regulations but do not present any new or different arguments.For example, petitioners argue that the doctrine of legislative reenactment invalidates the regulations.[2] Second, *294 petitioners argue that the regulations are invalid because the Internal Revenue Service failed to comply with the Administrative Procedures Act and the Service's own rules by establishing an effective date and suspending two revenue rulings in a news release, by not publishing the amended regulation at least 30 days before its effective date, by abusing its discretion under section 7805 and retroactively amending the regulations and by arguing that the general provisions of section 7805 control over a more specific section, such as section 612. Petitioners argue that all of these procedural attacks invalidate the regulations or that at least one of these attacks is sufficient to invalidate the regulations. This Court, however, has on several prior occasions confronted all of petitioners' arguments and has rejected them. Wendland v. Commissioner,supra; Wing v. Commissioner,supra;Surloff v. Commissioner,81 T.C. 210 (1983); Elkins v. Commissioner,81 T.C. 669 (1983). Due to the extensive rationale already set forth in the above-referenced opinions, nothing would be served to restate it here. We conclude that the regulations *295 are valid, relying on the cases cited above. Petitioners next argue that the royalties were paid pursuant to a minimum royalty provision as provided in section 1.612-3(b)(3), Income Tax Regs.[3] Under the regulation, if no mineral product is produced during a given year, then no royalty deductions *296 are allowed in that year unless royalties are paid or accrued as a result of a provision in the lease requiring that substantially uniform royalties be paid each year of the lease. In the instant case, no coal was mined or sold during 1977 on the property petitioner leased. Thus, in order for the royalty payment of $67,500 "paid" by petitioner to be deductible in 1977, the payment must have been made pursuant to a valid minimum royalty provision. *297 Respondent argues that, because petitioner was not required to make annual royalty payments in the absence of mineral production, the payment by petitioner does not satisfy the requirements set forth in section 1.612-3(b)(3), Income Tax Regs. In support of his position, respondent relies on the "Addendum to Mining Lease" which allows petitioner to make future annual royalty payments by the execution of a nonrecourse note. Under the terms of such nonrecourse note, payment would only be made from all coal mined in excess of the initial 54,000 tons. On several occasions we have addressed the question of whether a nonrecourse note constitutes payment for purposes of the minimum royalty provision under section 1.612-3(b)(3), Income Tax Regs.Wing v. Commissioner,supra;Thompson v. Commissioner,supra;Walls v. Commissioner,supra;Maddrix v. Commissioner,83 T.C. 613, 620-626 (1984). [4] In all of these cases, the taxpayers satisfied their obligation to pay an advance minimum royalty by executing an agreement where the taxpayer transferred some cash and signed a nonrecourse promissory note in the balance *298 amount payable generally in 10 years. The Government argued in these cases that the provision at issue did not constitute a "minimum royalty provision" because it allowed the taxpayer to defer the balance of the royalty for some years through the execution of a nonrecourse note, rather than requiring payment each year. See also Vastola v. Commissioner, 84 T.C.     (May 21, 1985). In adopting the Government's position that the provision in question did not constitute a valid "minimum royalty provision," we stated in Wing v. Commissioner,supra at 40-41, that: To qualify for the deduction, the petitioner must meet the terms of the regulation, which *299 sets out that a minimum royalty provision must require payment at least annually. That the note may in fact be paid at some later date is not sufficient to establish the existence of such a requirement. Our holdings and logic in Wing,Maddrix, and Vastola are squarely on point and clearly apply to the instant case. The "Addendum to Mining Lease" executed by the parties authorized the payment of all future annual minimum royalties for 1977 and subsequent years by means of nonrecourse notes due on December 31, 1997, with payment required only when coal in excess of the initial 54,000 tons was produced. Thus, regardless of the likelihood of the eventual satisfaction of such notes, the "Addendum to Mining Lease" permitted deferral of the minimum annual royalties provided for in the "Mining Lease" for the years 1977 and thereafter so that payment was not required to be made at least annually. Consequently, the $67,500 "payment" made by petitioner in 1977 was not made pursuant to a valid "minimum royalty provision" in accordance with valid section 1.612-3(b)(3), Income Tax Regs.
The next issue we must decide is whether damages shall be awarded under section 6673. [5] *300 Petitioners through their counsel do not make any new arguments. Moreover, no attempt was made to factually or legally distinguish their case from the clear and established precedent in this area and with this Court. Indeed, no difference exists. This case involves the same Wyoming and Western Coal Reserves, Inc., that has been involved in several prior adjudications of this Court. Petitioners' counsel was also counsel for taxpayers in Ward v. Commissioner,supra, [6] that involved the same arrangements with WW as here. Notwithstanding counsel's familiarity with the law and cases decided and published before submission of this case for our consideration, petitioners through their counsel present the same arguments. In fact, the briefs submitted in this case are substantially identical to other briefs and memoranda filed with this Court dealing with coal shelters. [7] The similarities are too numerous to be a coincidence. Regardless of the reasons why the briefs are substantially identical, this case has unreasonably and unnecessarily consumed precious time. *301 Petitioners present the same material facts dealing with WW that this Court has previously and frequently decided. Oneal v. Commissioner,supra, Ward v. Commissioner,supra,Thompson v. Commissioner,supra, and Walls v. Commissioner,supra. In addition, petitioners repetitiously raise the same issues already decided in Wendland v. Commissioner,supra, Redhouse v. Commissioner,supra,Wing v. Commissioner,supra,Thompson v. Commissioner,supra, and Walls v. Commissioner,supra.See also Vastola v. Commissioner,supra. Petitioners, however, have not presented any new or meritorious arguments to distinguish their case from the previously litigated and existing precedent. In fact, the same prepackaged and preprinted forms employed in the prior cases were used here as well as the briefs that appear to be prepackaged. The only difference is the amount of money "invested" and, more importantly, the amount of deductions claimed. It is apparent from the facts of this case that petitioners were involved in an abusive *302 tax shelter.Essentially, petitioners have claimed a 4-to-1 "leveraged" deduction based upon nonrecourse financing which is payable out of production, if any. This is tantamount to purchasing a $4 tax deduction with every dollar paid to a promoter who provides a facade of a legitimate enterprise to satisfy the form of the transaction. This type of arrangement frustrates the congressional purpose inherent in the deductions that we here disallow to petitioners. In spite of numerous Court opinions squarely on point, petitioners have forced an already overburdened Court and tax system to unnecessarily consume precious resources. Petitioners, and others who participate in specious tax strategems, must accept the consequences of their actions. The conferees in discussing damages under section 6673 stated "[t]he conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court." H. Rept. 98-861 (Conf. Rept.) (1984), 1984-3 C.B. (Vol. 2) 1, 239. Congress also noted with approval the steps that this Court *303 has taken in the tax shelter and tax protester areas and stated that this "Court should take further action in these two areas, as well as assert, without hesitancy in appropriate instances, the penalties that the Congress has provided." H. Rept. 98-861, supra at 239. We also have stated in Elliott v. Commissioner,84 T.C. 227, 248 (1985), that "[a]t some point, the arguments in these highly leveraged tax avoidance (or evasion) schemes must be regarded as 'frivolous or groundless,'" citing section 6673. We have frequently found that cases based upon meritless contentions and stale arguments, as petitioners through their counsel raise, are burdensome both on this Court and upon society as a whole. See Abrams v. Commissioner,82 T.C. 403 (1984). The time spent upon this case has delayed other cases of merit which could have provided new precedents to the tax system. Petitioners' brief, much like their abusive tax shelter "investment," was merely a prepackaged, pro forma presentation. Upon review of this record, we find petitioners' positions frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. *304 We admonish other petitioners and their counsel not to maintain frivolous proceedings before this Court or to maintain them primarily for delay. On respondent's motion, we award damages to the United States under section 6673 in the maximum amount of $5,000. To reflect the foregoing, An appropriate order will be entered on respondent's motion for damages and a decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue.↩
2. Petitioners argue that administrative practice reflected in the regulation prior to its 1977 amendment had acquired the force of law and, by virtue of the legislative reenactment doctrine, could not be altered without congressional action. We have held, however, that the legislative reenactment doctrine does not bar respondent from amending the regulation. Wing v. Commissioner,81 T.C. 17, 35-36 (1983); Wendland v. Commissioner,79 T.C. 355, 383-385 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); Surloff v. Commissioner,81 T.C. 210 (1983); and several Memorandum Opinions of this Court, e.g., Gibson v. Commissioner,T.C. Memo. 1984-616, and Chidness v. Commissioner,T.C. Memo. 1984-612↩.
3. Sec. 1.612-3(b)(3) provides in pertinent part: The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e.,↩ when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * *
4. This Court on numerous occasions has held that the contingent nature of nonrecourse notes does not establish an enforceable requirement that substantially uniform minimum royalties be paid annually, regardless of annual production. Wing v. Commissioner,supra;Surloff v. Commissioner,supra;Maddrix v. Commissioner,83 T.C. 613, 620-626 (1984); Vastola v. Commissioner,↩ 84 T.C.    ,     (May 21, 1985) (Slip Opinion at pages 11-12).
5. SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC. Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. ↩
6. John Patrick Kelly is also counsel for taxpayers in several cases before this Court at this time. For example, Nichols v. Commissioner,T.C. Memo 1985-338, Rosebrough v. Commissioner,T.C. Memo 1985-339, and King v. Commissioner,T.C. Memo 1985-340. Nichols and Rosebrough↩ concern the same arrangements with Wyoming and Western Coal Reserves, Inc. 7. In many tax shelters similar to this one, Joseph R. Laird, Jr., Attorney at Law, who is also President of WW, encloses a letter in the documents stating that he personally guarantees that legal representation will be provided to "investors" such as petitioners in this case in the event that the Internal Revenue Service attacks the projected tax treatment.↩