JEFFRY L. LURKIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lurkis v. Commissioner
Docket No. 6937-83.
United States Tax Court
T.C. Memo 1985-585; 1985 Tax Ct. Memo LEXIS 47; 51 T.C.M. (CCH) 15; T.C.M. (RIA) 85585; December 2, 1985. *47 Held, P is not entitled to deduct advance royalties paid during 1977 because no coal was ever produced during that year and the royalties were not paid pursuant to a valid minimum royalty provision as provided in section 1.612-3(b)(3), Income Tax Regs.Held further, damages are awarded under section 6673, I.R.C. 1954, for maintaining a groundless and frivolous claim. Mark F. Weiss, for the petitioner. John O. Kent, *48 for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency of $21,564 in petitioner's 1977 Federal income tax. The issues for decision are: (1) whether petitioner is entitled to deduct coal mining royalties in the amount of $45,000 paid pursuant to a coal mining lease; and (2) whether damages should be awarded under section 6673. [1]
FINDINGS OF FACT All of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Jeffry L. Lurkis resided at Bel Air, California, at the time his petition was filed. During 1977, petitioner entered into a coal mining lease with Wyoming and Western Coal Reserves, Inc. (WW). Under the lease, petitioner was entitled to mine all of the "economically recoverable" coal contained in and on certain acreage identified in his lease for a period of 10 years plus the remainder of 1977. *49 In exchange for the coal mining lease, petitioner agreed to pay WW a $1,000 lease deposit and a minimum annual royalty payment of $45,000. Petitioner agreed to pay the minimum annual royalty at the rate of $1.50 per ton of coal sold or mined, removed and marketed. One-fourth of the minimum annual royalty payment for the first year of the lease was payable at the inception of the lease. The balance was payable on or before December 31, 1977. The remaining nine minimum annual royalty payments were payable on or before December 31 of the following nine years. On November 21, 1977, petitioner entered into an "Addendum to Mining Lease" with WW which allowed petitioner to pay minimum annual royalties due on December 31, 1979, and thereafter by cash or non-recourse note. If petitioner elected to pay by note, the addendum set forth the following required form for such note: $45,000.000 December 31, 1979 The undersigned promises to pay WYOMING AND WESTERN COAL RESERVES, INC., FORTY FIVE THOUSAND DOLLARS with interest at 6% per annum from date hereof This is a non-recourse note. Payments to be made to payee from all coal mined, in excess of the initial 60,000 tons, on the basis *50 of $2.00 per ton of coal sold or mined, removed and marketed from the Leased Premises. The form note did not specify a time for payment. On November 23, 1977, petitioner entered into a "Second Addendum to Mining Lease" with WW which provided as follows: In the event that the Congress of the United States should adopt, and the President of the United States sign into law before January 1, 1979, any legislation that would deprive Lessee of the tax benefits presently accruing to him under the terms of the Internal Revenue Code and under the terms of said Lease Agreement, or, should the United States Tax Court issue a decision or should the Internal Revenue Service adopt a regulation which would likewise deprive Lessee of the aforementioned benefits, Lessor shall, upon demand made in writing, return to Lessee any funds paid to Lessor during the calendar year 1978, and shall accept Lessee's non-recourse note as payment for all royalties due during 1978 under the terms of said lease. Petitioner paid one-quarter ($11,250) of the 1977 minimum annual royalty with his own check dated November 10, 1977. Petitioner then borrowed the remaining amount ($34,750, which includes the $1,000 *51 lease deposit) from Coal & Minerals Leasing & Development Corporation (CM). In exchange for petitioner's nonrecourse promissory note, CM issued a check to petitioner which he negotiated to WW. No coal was mined or produced in 1977 on the property leased by petitioner. On Schedule C (Profit or Loss From Business or Profession) attached to his 1977 Federal income tax return, petitioner claimed a royalty deduction with respect to the WW lease in the amount of $45,000. In the notice of deficiency, respondent disallowed petitioner's claimed royalty deduction in full. OPINION With the exception of the amounts invested, the fact pattern in this case is substantially similar to those in Oneal v. Commissioner,84 T.C. 1235 (1985); Kaji v. Commissioner,T.C. Memo. 1985-341; King v. Commissioner,T.C. Memo. 1985-340; Ward v. Commissioner,T.C. Memo. 1984-570 (on appeal, 9th Cir. Jan. 14, 1985); Thompson v. Commissioner,T.C. Memo. 1984-337; and Walls v. Commissioner,T.C. Memo. 1983-504. In all of these cases, we held that the royalty payments made by the taxpayers were not deductible *52 under the guidelines set forth in section 1.612-3(b)(3), Income Tax Regs.
Section 1.612-3(b)(3), Income Tax Regs., provides in relevant part as follows: (3) The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or *53 for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * [Emphasis added.] Under the regulation, if no mineral product is produced in a given year, then no royalties are deductible in that year unless royalties are paid or accrued pursuant to a minimum royalty provision in the lease requiring that substantially uniform royalties be paid each year of the lease. Thus, because no coal was produced in 1977 on the property leased by petitioner, the royalties in issue are deductible only if paid pursuant to a minimum royalty provision as defined by the regulation. In the instant case, petitioner entered into an "Addendum to Mining Lease" which permitted him to pay the annual minimum royalties for 1979 and thereafter by means of non-recourse notes. Payment on the notes was required only when coal in excess of a certain amount was produced. Thus, the "Addendum to Mining Lease" permitted *54 deferral of the post-1978 minimum annual royalty payments such that payment was not required to be made at least annually. Consequently, the royalties paid by petitioner during 1977 were not paid pursuant to a "minimum royalty provision" requiring that substantially uniform royalties be paid each year of the lease. Oneal v. Commissioner,supra;Kaji v. Commissioner,supra;King v. Commissioner,supra;Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra.
We must next decide whether damages should be awarded under section 6673. Under that section, the Court may award damages to the United States of up to $5,000 when the proceeding has been instituted by the taxpayer primarily for delay or if the taxpayer's position in such proceeding is frivolous or groundless. On the facts before us, we find that petitioner's position is frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. The instant case is neither factually nor legally distinguishable from previous cases deciding *55 this issue. See Oneal v. Commissioner,supra;Kaji v. Commissioner,supra;King v. Commissioner,supra;Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra.Respondent's motion to assess damages pursuant to section 6673 was served on petitioner at calendar call and informed him that the facts and issues of his case had been previously adjudicated and decided by the Court in Walls, Thompson and Ward. Petitioner nevertheless submitted his case for decision without presenting any new arguments or attempting to meaningfully distinguish his case from the previously decided cases. In Oneal v. Commissioner,supra, we awarded damages to the United States in the amount of $5,000 as to each petitioner and admonished other petitioners and their counsel not to maintain frivolous proceedings before this Court or to maintain them primarily for delay. We deem it appropriate to award damages in the same amount here, since the cases are essentially indistinguishable. Consequently, on respondent's motion, *56 we award damages to the United States under section 6673 in the maximum amount of $5,000. To reflect the foregoing, An appropriate order will be issued on respondent's motion to assess damages and decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩