EILEEN COHEN AND ESTATE OF HARRY COHEN, DECEASED, ISADORE COHEN, EXECUTOR, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Cohen v. Commissioner
Docket Nos. 11768-81, 11737-82, 15480-82, 21747-82, 345-83, 7320-83, 7502-83, 7523-83.
United States Tax Court
T.C. Memo 1985-591; 1985 Tax Ct. Memo LEXIS 40; 51 T.C.M. (CCH) 46; T.C.M. (RIA) 85591; December 5, 1985. *40 Held, Ps are not entitled to deduct advance royalties paid during the years in issue because no coal was ever produced during those years and the royalties were not paid pursuant to a valid minimum royalty provision as provided in section 1.612-3(b)(3), Income Tax Regs.Held further, N is liable for additions to tax under section 6651(a), I.R.C. 1954 (failure to timely file a return) for 1977. Held further, damages are awarded under section 6673, I.R.C. 1954, for maintaining a groundless and frivolous claim. John Patrick Kelly, for the petitioners. John O. Kent, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes: Additions to Tax
Petitioner
Docket No.
Year
Deficiency
Sec. 6651(a) [2] *41 Eileen Cohen and
11768-81
1976
[3] $12,900.00
Estate of Harry Cohen,
1977
8,890.00
Deceased, Isadore
Cohen, Executor
Thomas L. McKnight and
11737-82
1978
8,775.00
Ora T. McKnight
Estate of Harry Cohen
15480-82
1978
10,770.00
(Deceased), Eileen Cohen,
Executrix and Eileen
Cohen
William P. Peccole
21747-82
1977
261,888.00
and Wanda Peccole
1978
268,206.00
Samuel W. Botta and
345-83
1977
8,592.00
Theresa E. Botta
1978
6,816.00
Dominick C. Palestini
7320-83
1977
22,836.08
Robert S. Neuenschwander
7523-83
1977
8,264.69
$1,487.74
and Kathleen B.
7502-83
1978
13,548.50
Neuenschwander After concessions by petitioners, the issues for decision are: (1) whether petitioners are entitled to deduct certain coal mining royalties paid pursuant to coal mining leases; (2) whether petitioners Robert S. and Kathleen B. Neuenschwander are liable for additions to tax under section 6651(a) (failure to timely file an income tax return); and (3) whether damages should be awarded under section 6673. FINDINGS OF FACT All of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Eileen and Harry Cohen, husband and wife, resided at Narbeth, Pennsylvania, at the time their petitions were filed. Petitioners Thomas L. and Ora T. McKnight, husband and wife, resided at El Paso, Texas, at the time their petition was filed. Petitioners William P. and Wanda Peccole, husband and wife, resided at Las Vegas, Nevada, at the time their petition was filed. *42 Petitioners Samuel W. and Theresa E. Botta, husband and wife, Dominick C. Palestini and Robert S. and Kathleen B. Neuenschwander, husband and wife, resided in California at the time their respective petitions were filed. We will hereinafter refer to the husbands as petitioner(s) or by their last name. During 1977, petitioners entered into coal mining leases with Wyoming and Western Coal Reserves, Inc. (WW). Under the leases, petitioners were entitled to mine all of the "economically recoverable" coal contained in and on certain acreage identified in their respective leases. McKnight and Botta entered into leases giving them the right to mine coal for a period of eight years plus the remainder of 1977. The leases entered into by the other petitioners gave them the right to mine coal for a period of 10 years plus the remainder of 1977. In exchange for the coal mining leases, each petitioner agreed to pay WW a $1,000 lease deposit and a minimum annual royalty payment. [4] McKnight and Botta agreed to pay the minimum annual royalty at the rate of $2.50 per ton of coal sold or mined, removed and marketed. The other petitioners agreed to pay the royalty at the rate of $1.50 per ton of *43 coal sold or mined, removed and marketed. One-fourth of the minimum annual royalty payment for the first year of the lease was payable at the inception of the lease. The balance was payable on or before December 31, 1977. The minimum annual royalties to be paid in subsequent years were payable on or before December 31 of each year. During 1977, each petitioner also entered into an "Addendum to Mining Lease" with WW which allowed such petitioner to pay minimum annual royalties due on December 31, 1979, and thereafter by cash or non-recourse note. The addenda executed by McKnight and Botta provided that payment on such note would be made from all coal mined from the leased premises in excess of 18,000 tons. The total balance of principal and interest was due and payable on December 31, 1997. The addendum executed by Peccolo provided that payment on his note would be made from all coal mined in excess of 540,000 tons. The addendum executed by the other petitioners provided that payment on their notes would be made from *44 all coal mined in excess of 60,000 tons. The addenda executed by Peccole, Neuenschwander, Palestini and Cohen failed to specify a time for payment of the notes. Each petitioner paid a portion of his 1977 minimum annual royalty with his own check. Each petitioner then borrowed the remaining amount from Coal & Minerals Leasing & Development Corporation (CM). In exchange for petitioners' non-recourse promissory notes, CM issued checks to petitioners which they endorsed over to WW pursuant to an "Authorization to Negotiate". McKnight and Botta simultaneously entered into contracts for the sale of coal with CM under which they each agreed to sell 18,000 tons of coal to CM at $3.50 per ton. Peccole entered into a similar contract with CM under which Peccole agreed to sell 540,000 tons of coal to CM at $2.50 per ton. The contracts entered into by the other petitioners provided for the sale of 60,000 tons of coal to CM at $2.50 per ton. Payments under the contracts were to be made on December 31, 1987, although CM was granted the right to extend the payment date until December 31, 1997. Prior to the due date, payments of principal and interest were to be made exclusively from receipts *45 of coal mined, removed and marketed. The contracts further provided that as additional inducements for petitioners entering into these contracts, CM agreed to lend petitioners certain amounts in 1977 and 1978. As stated above, petitioners paid a portion of their 1977 minimum royalty payments with amounts borrowed from CM. Petitioners also borrowed additional amounts from CM in 1978 to pay a portion of their 1978 minimum royalty payments. Rather than paying the remaining amount owed for 1978 in a lump sum, each petitioner signed a note promising to pay WW the remaining balance in 12 monthly installments, with 10 percent annual interest on the unpaid principal from January 1, 1978. The first installment was due January 15, 1978, and the last was due December 15, 1978. No coal was mined or produced in 1977 or 1978 on the property leased by petitioners. On Schedule C (Profit or Loss From Business or Profession) attached to their 1977 and 1978 Federal income tax returns, petitioners claimed the following royalty deductions with respect to the WW leases: [5] *46 Petitioners
1977
1978
Harry and Eileen Cohen
45,000
41,161
Thomas L. and Ora T. McKnight
22,500
William P. and Wanda Peccole
405,000
405,000
Samuel W. and Theresa A. Botta
22,500
21,058
Dominick C. Palestini
45,000
Robert S. and Kathleen B. Neuenschwander
[6] $22,243
$33,750 In the notice of deficiency, respondent disallowed petitioners' claimed royalty deductions in full. OPINION With the exception of the amounts invested, the fact pattern in this case is substantially the same as those in Oneal v. Commissioner,84 T.C. 1235 (1985); Kaji v. Commissioner,T.C. Memo. 1985-341; King v. Commissioner,T.C. Memo. 1985-340; Ward v. Commissioner,T.C. Memo. 1984-570, on appeal (9th Cir., Jan. 14, 1985); Thompson v. Commissioner,T.C. Memo. 1984-337; and Walls v. Commissioner,T.C. Memo. 1983-504. On the facts of these cases, which are like the facts here, we held that the royalty payments made by the taxpayers were not deductible under the guidelines set forth in section 1.612-3(b)(3), Income Tax Regs.
Section 1.612-3(b)(3), Income Tax Regs., provides in relevant *47 part as follows: (3) The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For *48 purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * [Emphasis added.] Under the regulation, if no mineral product is produced in a given year, then no royalties are deductible in that year unless royalties are paid or accrued pursuant to a minimum royalty provision in the lease requiring that substantially uniform royalties be paid each year of the lease. Thus, because no coal was mined or produced in 1977 or 1978 on the property leased by petitioners, the royalties in issue are deductible only if paid pursuant to a minimum royalty provision as defined by the regulation. In the instant case, petitioners each entered into an "Addendum to Mining Lease" which permitted them to pay the annual minimum royalties for 1979 and thereafter by means of non-recourse notes. Payment on the notes was required only when coal in excess of a certain amount was produced. Thus, the "Addendum to Mining Lease" permitted deferral of the post-1978 minimum annual royalty payments such that payment was not required to be made at least annually. *49 Consequently, the royalties paid by petitioners during the years in issue were not paid pursuant to a "minimum royalty provision" requiring the payment of substantially uniform royalties each year of the lease. Oneal v. Commissioner,supra;Kaji v. Commissioner,supra;King v. Commissioner,supra;Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra.
Petitioners set forth numerous arguments attacking the validity of section 1.612-3(b)(3), Income Tax Regs. Petitioners' arguments, however, were considered and rejected in Wing v. Commissioner,81 T.C. 17, 26-35 (1983); and Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). We therefore will not reconsider them here. The next issue for decision is whether petitioners Robert S. and Kathleen B. Neuenschwander are liable for additions to tax under section 6651(a).That section imposes an addition to tax for failure to timely file an income tax return unless it is shown that such failure was due to reasonable cause and not due to willful neglect. Petitioners bear the burden of proving *50 error in respondent's determination that an addition to tax should be imposed. Ehrlich v. Commissioner,31 T.C. 536, 540 (1958). In general, a calendar year taxpayer must file an income tax return on or before April 15 following the close of the calendar year. Section 6072(a). Although the record contains no evidence as to when petitioners filed their 1977 income tax return, petitioners signed this return on July 26, 1978, more than three months after its due date. Petitioners do not allege that they received a filing extension nor do they contend that the failure to file was due to reasonable cause and not willful neglect. Accordingly, we sustain respondent's determination. Finally, we must decide whether damages should be awarded under section 6673. Under that section, the Court may award damages to the United States of up to $5,000 when the proceeding has been instituted by the taxpayer primarily for delay or if the taxpayer's position in such proceeding is frivolous or groundless. On the facts before us, we find that petitioners' positions are frevolous and groundless and that this proceeding was instituted and maintained primarily for delay. The instant case is neither factually *51 nor legally distinguishable from previous cases deciding this issue. See Oneal v. Commissioner,supra;Kaji v. Commissioner,supra;King v. Commissioner,supra;Ward v. Commissioner,supra;Thompsom v. Commissioner,supra; and Walls v. Commissioner,supra.Respondent's motions to assess damages pursuant to section 6673 were served on petitioners at calendar call and informed them that the facts and issues of their case had been previously adjudicated and decided by the Court in Walls,Thompson and Ward. Moreover, petitioners' counsel was also counsel for taxpayers in Kaji,King and Ward. We are therefore certain that petitioners and their counsel were well aware of the clear and established precedent in this area. Petitioners nevertheless submitted this case for decision without presenting any new arguments or attempting to meaningfully distinguish their case from the previously decided cases. In Oneal v. Commissioner,supra, we awarded damages to the United States in the amount of $5,000 as to each petitioner and admonished other petitioners and their counsel not to maintain frivolous proceedings before this Court or to maintain them primarily for delay. We deem it appropriate *52 to award damages in the same amount here, since the cases are essentially indistinguishable.Consequently, on respondent's motions, we award damages to the United States under section 6673 in the maximum amount of $5,000 as to petitioners in docket Nos. 11768-81 and 15480-82, $5,000 as to petitioners in docket Nos. 7502-83 and 7523-83 and $5,000 as to petitioners in docket Nos. 11737-82, 21747-82, 345-83 and 7320-83, respectively. To reflect the foregoing, Appropriate orders will be issued on respondent's motions to assess damages and decisions will be entered for respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Thomas L. McKnight and Ora T. McKnight, docket No. 11737-82; Estate of Harry Cohen (Deceased), Eileen Cohen, Executrix and Eileen Cohen, docket No. 15480-82; William P. Peccole and Wanda Peccole, docket No. 21747-82; Samuel W. Botta and Theresa E. Botta, docket No. 345-83; Dominick C. Palestini, docket No. 7320-83; and Robert S. Neuenschwander and Kathleen B. Neuenschwander, docket Nos. 7502-83 and 7523-83.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure. 3. Petitioners have conceded the deficiency for 1976.↩
4. Petitioners agreed to pay the following minimum annual royalties: ↩
Petitioner
Amount
Peccole
$405,000
Palestini
45,000
Neuenschwander
45,000
Cohen
45,000
Botta
22,500
McKnight
22,500
5. Petitioners Robert S. and Kathleen B. Neuenschwander claimed their royalty deductions on Schedule E (Supplemental Income Schedule) attached to their 1977 and 1978 Federal income tax returns. 6. The parties stipulated that petitioners claimed a royalty deduction in the amount of $22,243. On Schedule E attached to their 1977 income tax return, however, petitioners actually claimed a deduction in the amount of $22,423.↩