HERBERT POSTER and SUSAN POSTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Poster v. Commissioner
Docket No. 40925-84.
United States Tax Court
T.C. Memo 1988-57; 1988 Tax Ct. Memo LEXIS 57; 55 T.C.M. (CCH) 117; T.C.M. (RIA) 88057; February 18, 1988. William J. Werner, for the petitioners. Francis J. Strapp, Jr., for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: By a notice of deficiency dated September 19, 1984, respondent determined a deficiency of $ 69,082 in petitioners' 1979 Federal income tax. This case is before the Court on respondent's motion for partial summary judgment under Rule 121 [1] on the single issue of whether petitioners may deduct an alleged advanced minimum royalty payment. [1]
*58 Herbert and Susan Poster, petitioners, were residents of Fort Lee, New Jersey, at the time of filing the petition. Susan Poster is a party solely by virtue of having filed a joint petitioner with her husband. Accordingly, all future references to petitioner refer to Herbert Poster. The pleadings, affidavits and exhibits thereto contain the facts used for the purpose of ruling on the motion. The facts and inferences to be drawn must be viewed in the light most favorable to the party opposing the motion. Jacklin v. Commissioner,79 T.C. 340, 344 (1982). Such party must, however, set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). In opposing respondent's motion petitioner claims the following: The Grand Coal Venture (Grand Coal or the partnership) was a general partnership formed for the purpose of developing and mining certain coal-bearing properties in Campbell County, Wyoming (the property). The partnership elected under section 761(a)(2) to be excluded from the provisions of subchapter K. On December 17, 1979, petitioner invested in Grand Coal, receiving 2.93 units of the total interest. Petitioner's decision to invest *59 was based on a "Preliminary Geologist Report" which estimated that the property contained substantial reserves of lignitic coal. On December 17, 1979, petitioner executed a "Second Sublease" (the lease) with Mustan Associates, Inc. (sublessor or Mustan). Mustan was a general partnership organized under the laws of the State of Florida. The lease provided that petitioner, in conjunction with the other partners in Grand Coal, would receive an undivided interest in the coal deposits and mining rights and privileges of the property. Petitioner promised to develop and exploit the property. Petitioner was to pay royalties in an amount determined under the following formula: $ 2.50 per ton of the first 50,000 tons and thereafter the greater of 15 percent of the net pit price [2] plus $ .50 per ton or $ 3.00 per ton. Royalty payments were due each month. The lease also provided that petitioner would make annual advanced minimum royalty payments in the amounts of $ 130,000 per year for an eight-year term. The advanced minimum royalty payment for the first year of the lease, *60 1979, was to include a cash payment of $ 25,000 and a promissory note in the amount of $ 110,000, bearing an interest rate of 8 1/2 percent and due on December 1, 1998. [3] In subsequent years, each advanced minimum royalty payment was to be comprised of a nonrecourse promissory note, in the amount of $ 130,000, bearing an interest rate of 8 1/2 percent. The nonrecourse promissory notes were to be paid on a schedule requiring payment of $ 2.50 per ton of coal mined and sold, applied first to principal and then to accrued interest. If the coal production tonnage was insufficient to meet this schedule, the principal and interest due would be deferred until December 31, 1998, when the balance of the note was due. On January 25, 1989, petitioner and Mustan executed a Modification to the Second Sublease (modification). The modification provided that the promissory note due as an advanced minimum royalty payment *61 for the second year of the lease, 1980, would be a recourse note in the amount of $ 110,000 combined with a cash payment in the amount of $ 20,000, rather than a nonrecourse note in the amount of $ 130,000 as stated in the lease. Under the provisions of the modification, the note for 1980 would contain the same terms as the note for 1979 and would be due on December 31, 1998. Notes subsequent to the 1980 recourse note would be nonrecourse as provided in the lease. Petitioner and Mustan executed a Security Agreement, providing Mustan with a security interest in the rights and privileges contained in the lease. By check dated December 10, 1979, petitioner paid Mustan $ 20,000 and executed a recourse promissory note in the amount of $ 110,000. [4] The note imposed an annual interest obligation at a rate of 8 1/2 percent. The amount of principal and interest due was to be computed under a formula multiplying $ 2.50 by the number of tons of coal mined, removed and shipped per month. If production was insufficient to cause the payments to equal the annual payment due, the balance of interest and principal would be due on December 1, 1998. The note was secured by the lease itself. *62 No coal was mined, produced or sold by either petitioner or Grand Coal during 1979. On Schedule C of the joint 1979 Federal income tax return petitioner claimed a loss in the amount of $ 130,000 resulting from payment of the advanced minimum royalty. Respondent maintains that the payment at issue herein was not an advanced minimum royalty payment because it was not a "substantially uniform amount" which was "required to be paid at least annually over the life of the lease or for a period of 20 years." Respondent argues that the terms of the agreement allow payment contingent on the production and sale of coal and such an arrangement does not require annual payments. Respondent further argues that the fact that the notes executed in 1979 and 1980 were recourse does not alter the contingent nature of repayment, because the notes which were executed in payment for royalties after 1980 were nonrecourse notes and thus not required to be paid. Petitioner's initial argument is that *63 respondent's motion cannot be granted because there is a remaining question of fact. Petitioner contends that we must first determine the fair market value of the underlying coal lease because such a finding is necessary to decide whether petitioner was motivated by a profit objective in entering into this transaction. However, that issue has not been raised here and the case can be resolved by determining whether the payment made in 1979 constituted an advanced minimum royalty payment within the meaning of respondent's regulations. Petitioner next maintains that because the note executed in 1979 was a full recourse note, the payment was "required" and constituted an advanced minimum royalty payment. Noting that the language of the regulations specifically mentions "accruing" as an acceptable alternative to "paying," petitioner argues that the note was accrued when executed. Generally, advanced royalty payments are only deductible in the year that the product is sold. Sec. 1.612-3(b)(3), Income Tax Regs.; Wendland v. Commissioner,79 T.C. 355, 386 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). *64 However, when the advanced royalty is paid or accrued as a result of a minimum royalty provision, the payor is entitled to treat the payment as a deduction from gross income for the year in which the advanced payment is paid or accrued. The Regulations further provide that "For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years * * *." (Emphasis added.) Sec. 1.612-3(b)(3), Income Tax Regs.
In determining whether a payment meets the requirements of an advanced minimum royalty payment, we must look to the entire agreement. Wing v. Commissioner,81 T.C. 17 (1983). Where the lease provides that a payment may include nonrecourse promissory notes, the payment is not an advanced minimum royalty payment because the lease fails to require annual payments of a substantially uniform amount. Wing v. Commissioner, supra at 41; See also Oneal v. Commissioner,84 T.C. 1235 (1985). Furthermore, when a payment includes a nonrecourse promissory note whose repayment schedule is contingent *65 on mineral production from the property which is the subject of the lease, then the payment will not be an advanced minimum royalty payment. Vastola v. Commissioner,84 T.C. 969 (1985); Maddrix v. Commissioner,83 T.C. 613 (1984), affd. 780 F.2d 946 (11th Cir. 1986). The value of the collateral securing the lease is irrelevant. The focus for determination is not on the likelihood that the collateral securing the note will be sufficient to satisfy the obligation, but on whether payment is required annually. Wing v. Commissioner, supra.
Petitioner's argument follows a well worn path. We have considered numerous cases involving promissory notes which the taxpayers argued were sufficient to meet the requirements of an advanced minimum royalty payments. [5] The only unusual aspect about petitioner's transaction is that the first two promissory notes executed as partial payment of the purported advanced minimum royalty payment were full recourse on their faces. Whether petitioner actually intends to repay these obligations is not before us today. Nonetheless, we conclude that the overall arrangement fails to comport *66 with the requirements imposed by the regulations so that payments made pursuant to the lease are not advanced minimum royalty payments. The criteria for determining an advanced minimum royalty payment are clear. The payment must be required every year and must be substantially uniform in amount every year. We have established that nonrecourse notes do not constitute advanced minimum royalty payments, regardless of whether the collateral securing the notes has value equal to the face amount of the note. In the lease which petitioner has presented, the annual payment amount varies from year to year because *67 in the first two years the payment took the form of a full recourse note while in subsequent years the payment may take the form of nonrecourse notes. The overall arrangement, viewed as a whole, does not impose an obligation to pay the same amount every year. Under the facts presented here we can find no provision requiring that petitioner make substantially uniform annual payments. The document purporting to establish such a requirement instead show that petitioner was liable for payments only on the promissory notes executed for the first two years of the lease term. We conclude, as a matter of law, that the royalty payment made by petitioner in 1979 was not paid as a result of the minimum advanced royalty provision and, therefore, petitioner is not entitled to a deduction for that year. Petitioners have not established that, with respect to the issue before us, there is a genuine issue as to any material fact. Accordingly, respondent's motion for a partial summary judgment will be granted. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Net pit price is defined as the selling price of the coal less brokerage and other selling expenses. ↩
3. Both parties noted that the sum of the cash payment and the note equals $ 135,000 rather than $ 130,000. Petitioners attribute this to a typographical error. Regardless of the source of the confusion, both parties proceed as if the required payment were only $ 130,000. ↩
4. In taxable year 1980 petitioner signed a similar promissory note for $ 130,000. For taxable years 1981 through 1984 the promissory notes were nonrecourse in the amount of $ 130,000 per year. ↩
5. That a nonrecourse note will not suffice should be abundantly clear. See Harmon v. Commissioner,T.C. Memo. 1986-251; Lund v. Commissioner,T.C. Memo. 1985-342; Kaji v. Commissioner,T.C. Memo. 1985-341; King v. Commissioner,T.C. Memo. 1985-340; Nichols v. Commissioner,T.C. Memo. 1985-338; Ward v. Commissioner,T.C. Memo. 1984-570; Thompson v. Commissioner,T.C. Memo. 1984-337; Walls v. Commissioner,T.C. Memo. 1983-504↩, and others.