LOUIS ONEAL AND SHIRLEY ONEAL, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ARTHUR K. LUND AND COLLEEN M. LUND, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12511–81, 12512–81, 10961–82.     Filed June 4, 1985.

*Gary S. Vandeweghe*, for the petitioners. ·
*John O. Kent*, for the respondent.

GERBER, *Judge*: Respondent determined deficiencies of the following amounts in petitioners' 1977 and 1978 Federal income taxes:

| Petitioners | Docket No. | Taxable year | Deficiency |
|---|---|---|---|
| Oneal | 12511–81 | 1977 | $23,439 |
| Oneal | 10961–82 | 1978 | 17,767 |
| Lund | 12512–81 | 1977 | 44,712 |
|  |  | 1978 | 30,326 |

The issues presented for consideration are: (1) Whether petitioners are entitled to deduct certain claimed "advanced minimum royalties" under section 1.612–3(b)(3), Income Tax Regs., and (2) whether damages should be awarded under section 6673.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference.

Petitioners resided in San Jose, California, at the time they filed the petitions in these cases. All petitioners filed their 1977 and 1978 joint Federal income tax returns with the Internal Revenue Service Center in Fresno, California. On the Oneals' returns, their occupations were described as "Attorney" and "Housewife" and they deducted royalties in the

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years at issue.

amount of $45,000 in 1977 and $33,750 in 1978 on Schedule C as lessees of a coal mine. On the Lunds' returns, their occupations were also described as "Attorney" and "Housewife" and they deducted royalties in the amount of $90,000 in 1977 and $67,500 in 1978 on Schedule C as lessees of a coal mine.[2] References to petitioner in the singular will be to Louis Oneal.

This case presents the now-familiar coal lease shelter with a minimum annual royalty payment, most of which is "paid" by means of a nonrecourse note exclusively payable from mining receipts. During 1977, petitioner entered into a coal lease with Wyoming & Western Coal Reserves, Inc. (WW), which lease gave petitioner the right to mine merchantable coal at a specific location in Wyoming. Petitioner agreed to pay a minimum annual royalty payment of $45,000. The minimum annual royalty payment was to be recoverable out of the amount received from coal sold or mined, removed, and marketed, and was nonrefundable. In addition to the "mining lease," petitioner entered into an "addendum to mining lease" with WW. Pursuant to the addendum, petitioner, as lessee, was given the option of paying the minimum annual royalties provided in the lease either by cash or nonrecourse note. If payment by note was desired, then the addendum provided that petitioner was to pay WW on this nonrecourse note from all coal mined from the leased premises in excess of 60,000 tons.[3]

Petitioner paid one-quarter ($11,250) of the 1977 "minimum annual royalty payment" with his own check.[4] Petitioner then borrowed the remaining amount from Coal & Minerals Leasing & Development Corp. (CM). Any funds that CM issued to petitioner, petitioner negotiated to WW pursuant to an "au-

---

[2]The facts with respect to petitioners Arthur K. Lund and Colleen M. Lund are the same facts as with respect to petitioners Louis Oneal and Shirley Oneal except for the amount of the "minimum annual royalty." Thus, the text will describe the facts applicable to petitioners Louis Oneal and Shirley Oneal. The amounts applicable to petitioners Arthur K. Lund and Colleen M. Lund include a "minimum annual royalty" of $90,000 in 1977 with the Lunds' paying one-quarter ($22,500) of the 1977 royalty payment with their own check and borrowing the balance from Coal & Minerals Leasing & Development Corp. (CM). The Lunds made part of their royalty payment for 1978 by way of a note in the amount $22,500 to Wyoming & Western Coal Reserves, Inc. (WW).

[3]Petitioner Arthur K. Lund signed a "nonrecourse promissory note" which provided that payment upon the note was to be made from all coal mined in excess of the initial 120,000 tons.

[4]Petitioners Oneal did not make $11,250 of their royalty payment for 1978 because of an order from the attorney general of the State of California against WW arising from alleged securities violations, yet the Oneals claimed a $33,750 royalty deduction in 1978.

thorization to negotiate." Petitioner also entered into a "contract for the sale of coal" with CM under which petitioner agreed to sell coal to CM. Payments of principal and interest prior to the due date were to be made exclusively from receipts of coal mined, removed, and marketed.

The transactional documents executed by petitioners, including the "mining lease," the "addendum to mining lease," the "nonrecourse promissory note," the "authorization to negotiate," and the "contract for the sale of coal," appear to be part of a preprinted promotional package. No coal was mined or sold on the property petitioners leased during the years 1977 or 1978.

On their joint 1977 and 1978 income tax returns, petitioners Oneal attached a Schedule C for petitioner's coal mining business and claimed a deduction of $45,000 for 1977 and $33,750 for 1978 as a minimum royalty with respect to the WW lease. Petitioners Lund claimed a deduction of $90,000 for 1977 and $67,500 for 1978 as a minimum royalty with respect to the WW lease. Respondent, in his notice of deficiency, disallowed petitioners' claimed coal mining deductions in full.

## OPINION

With the exception of the amounts "invested," the factual pattern in this case is identical to that in *Ward v. Commissioner*, T.C. Memo. 1984–570, on appeal (9th Cir., Jan. 14, 1985); *Thompson v. Commissioner*, T.C. Memo. 1984–337; and *Walls v. Commissioner,* T.C. Memo. 1983–504. In fact, in all three prior cases and this case, similar arrangements were entered into with the same Wyoming & Western Coal Reserves, Inc., and with the same Coal & Minerals Leasing & Development Corp. The only differences are the amounts involved and minor variations in some detail. The documents executed by petitioner in this case are identical to those set forth in *Ward, Thompson,* and *Walls,* even down to the numbering of the paragraphs. We held in those cases that the deduction claimed as "advanced mineral royalties" was not allowable under the amended provisions of section 1.612–3(b)(3), Income Tax Regs., because no coal was produced in the relevant year.

This Court and two circuit courts of appeals have upheld the validity of amended section 1.612–3(b)(3), Income Tax Regs.

*Wing v. Commissioner*, 81 T.C. 17 (1983); *Wendland v. Commissioner*, 79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. *Redhouse v. Commissioner*, 728 F.2d 1249 (9th Cir. 1984).

Petitioners attack the validity of the regulations but do not present any new or different arguments. For example, petitioners argue that the doctrine of legislative reenactment invalidates the regulations.[5] Second, petitioners argue that the regulations are invalid because the Internal Revenue Service failed to comply with the Administrative Procedures Act and the Service's own rules by establishing an effective date and suspending two revenue rulings in a news release, by not publishing the amended regulation at least 30 days before its effective date, by abusing its discretion under section 7805 and retroactively amending the regulations, and by arguing that the general provisions of section 7805 control over a more specific section, such as section 612. Petitioners argue that all of these procedural attacks invalidate the regulations or that at least one of these attacks is sufficient to invalidate the regulations. This Court, however, has on several prior occasions confronted all of petitioners' arguments and has rejected them. *Wendland v. Commissioner, supra; Wing v. Commissioner, supra; Surloff v. Commissioner*, 81 T.C. 210 (1983); *Elkins v. Commissioner*, 81 T.C. 669 (1983). Due to the extensive rationale already set forth in the above-referenced opinions, nothing would be served to restate it here. We again conclude that the regulations are valid, relying on the cases cited above.

Petitioners next argue that the royalties were paid pursuant to a minimum royalty provision as provided in section 1.612–3(b)(3), Income Tax Regs.[6] Under the regulation, if no

---

[5]Petitioners argue that administrative practice reflected in the regulation prior to its 1977 amendment had acquired the force of law and, by virtue of the legislative reenactment doctrine, could not be altered without congressional action. We have held, however, that the legislative reenactment doctrine does not bar respondent from amending the regulation. *Wing v. Commissioner*, 81 T.C. 17, 35–36 (1983); *Wendland v. Commissioner*, 79 T.C. 355, 383–385 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. *Redhouse v. Commissioner*, 728 F.2d 1249 (9th Cir. 1984); *Surloff v. Commissioner*, 81 T.C. 210 (1983); and several Memorandum Opinions of this Court, e.g., *Gibson v. Commissioner*, T.C. Memo. 1984–616, and *Chidnese v. Commissioner*, T.C. Memo. 1984–612.

[6]Sec. 1.612–3(b)(3) provides in pertinent part:

"The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the

mineral product is produced during a given year, then no royalty deductions are allowed in that year unless royalties are paid or accrued as a result of a provision in the lease requiring that substantially uniform royalties be paid each year of the lease. In the instant case, no coal was mined or sold during 1977 or 1978 on the property petitioners leased. Thus, in order for the royalty payments "paid" by petitioners to be deductible in 1977 or 1978, the payments must have been made pursuant to a valid minimum royalty provision.

Respondent argues that, because petitioners were not required to make annual royalty payments in the absence of mineral production, the payments by petitioners do not satisfy the requirements set forth in section 1.612–3(b)(3), Income Tax Regs. In support of his position, respondent relies on the "addendum to mining lease" which allows petitioners to make future annual royalty payments by the execution of a nonrecourse note. Under the terms of such nonrecourse note, payment would only be made from all coal mined in excess of the initial 60,000 tons.[7]

On several occasions, we have addressed the question of whether a nonrecourse note constitutes payment for purposes of the minimum royalty provision under section 1.612–3(b)(3), Income Tax Regs. *Wing v. Commissioner, supra; Thompson v. Commissioner, supra; Walls v. Commissioner, supra; Maddrix v. Commissioner,* 83 T.C. 613, 620–626 (1984).[8] In all of these cases, the taxpayers satisfied their obligation to pay an advance minimum royalty by executing an agreement where

mineral is produced (*i.e.,* when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease."* * *

[7]See note 3 *supra* for the differences between the amounts of coal to be mined before payment would be due.

[8]This Court, on numerous occasions, has held that the contingent nature of nonrecourse notes does not establish an enforceable requirement that substantially uniform minimum royalties be paid annually, regardless of annual production. *Wing v. Commissioner, supra; Surloff v. Commissioner, supra; Maddrix v. Commissioner,* 83 T.C. 613, 620–626 (1984); *Vastola v. Commissioner,* 84 T.C. 969, 975–976 (1985).

the taxpayer transferred some cash and signed a nonrecourse promissory note in the balance amount payable generally in 10 years. The Government argued in these cases that the provision at issue did not constitute a "minimum royalty provision" because it allowed the taxpayer to defer the balance of the royalty for some years through the execution of a nonrecourse note, rather than requiring payment each year. See also *Vastola v. Commissioner*, 84 T.C. 969 (1985).

In adopting the Government's position that the provision in question did not constitute a valid "minimum royalty provision," we stated in *Wing v. Commissioner, supra* at 40–41, that:

To qualify for the deduction, the petitioner must meet the terms of the regulation, which sets out that a minimum royalty provision must *require* payment at least annually. That the note may in fact be paid at some later date is not sufficient to establish the existence of such a requirement.

Our holding and logic in *Wing, Maddrix,* and *Vastola* are squarely on point and clearly apply to the instant case. The "addendum to mining lease" executed by the parties authorized the payment of all future annual minimum royalties by means of nonrecourse notes. The notes were due in subsequent years and payment was required only if coal in excess of the initial 60,000 tons was produced.[9] Irrespective of the likelihood of the eventual satisfaction of such notes, the "addendum to mining lease" permitted deferral of the minimum annual royalties provided for in the "mining lease" so that payment was not required to be made at least annually. Consequently, the "payments" made by petitioners in 1977 and 1978 were not made pursuant to a valid "minimum royalty provision" in accordance with valid section 1.612–3(b)(3), Income Tax Regs.

Petitioners do not present any new arguments. Moreover, no attempt was made to factually or legally distinguish their case from the clear and established precedent in this area. This case involves the same Wyoming & Western Coal Reserves, Inc., that has been involved in several prior adjudications of this Court. Petitioners and their counsel consumed this Court's time supposedly to introduce evidence as to petitioners' intent. Yet petitioners and their counsel do not argue on brief that petitioners' intent can and does distinguish this case from the

---

[9]With respect to petitioners Arthur K. Lund and Colleen M. Lund, payment was required only if coal in excess of 120,000 tons was produced.

clear precedent in the area. In fact, the briefs submitted in this case are substantially identical to other briefs and memoranda filed with this Court dealing with Wyoming & Western Coal Reserves, Inc., and Coal & Minerals Leasing & Development Corp.[10] The similarities in petitioners' briefs are too numerous to be a coincidence. Regardless of the reasons why the briefs are substantially identical, this case has consumed respondent's and this Court's time. In addition, petitioners raise these same arguments in cases appealable to the Ninth Circuit which has already decided these issues. *Redhouse v. Commissioner*, 728 F.2d 1249 (9th Cir. 1984).

The next issue we must decide is whether damages shall be awarded under section 6673.[11] The *same* material facts presented by petitioners herein have previously been adjudicated by this Court in *Ward v. Commissioner, supra; Thompson v. Commissioner, supra;* and *Walls v. Commissioner; supra.* All of these cases concern tax shelters involving the same Wyoming & Western Coal Reserves, Inc., and were published before the trial and submission of these cases for our consideration. Petitioners and their counsel repetitiously raise the same issues already decided in *Wendland v. Commissioner, supra; Redhouse v. Commissioner, supra; Wing v. Commissioner, supra; Thompson v. Commissioner, supra;* and *Walls v. Commissioner, supra.* See also *Vastola v. Commissioner, supra.* While *Wendland v. Commissioner, supra,* was appealed to the 11th Circuit Court of Appeals, the 11th Circuit affirmed on August 21, 1984, which was before the date set for trial for any of these consolidated cases. Petitioners were given adequate notice well in advance of trial regarding similar cases involving the same facts and were provided notice of the law of the circuit to which their cases are appealable. Notwithstanding the well established precedent, petitioners have presented

---

[10]In many tax shelters similar to this one, Joseph R. Laird, Jr., attorney at law, who is also president of WW, encloses a letter in the documents stating that he personally guarantees that legal representation will be provided to "investors" such as petitioners in this case in the event that the Internal Revenue Service attacks the projected tax treatment.

[11]SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC.

Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.

their cases with no new or meritorious arguments to distinguish their cases from the previously litigated and existing precedent. In fact, the same prepackaged and preprinted forms employed in the prior cases were used here, as well as the briefs that appear prepackaged. The only difference in these cases is the amount of money "invested" and, more importantly, the amount of deductions claimed.

It is apparent from the facts of this case that petitioners were involved in an abusive tax shelter. Essentially, petitioners have claimed 4-to-1 "leveraged" deductions based upon nonrecourse financing which is payable out of production, if any. This is tantamount to purchasing a $4 tax deduction with every dollar paid to a promoter who provides a facade of a legitimate enterprise in an attempt to satisfy the form of the transaction. This type of arrangement frustrates the congressional purpose inherent in the deductions that we here disallow to petitioners. In spite of numerous Court opinions squarely on point, petitioners have forced an already overburdened Court and tax system to unnecessarily consume precious resources. Petitioners, and others who participate in specious tax strategems, must accept the consequences of their actions.

The conferees in discussing damages under section 6673 stated "The conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court." H. Rept. 98–861 (Conf.) (1984), 1984–3 C.B. (Vol. 2) 1, 239. Congress also noted with approval the steps that this Court has taken in the tax shelter and tax protester areas and stated that this "Court should take further action in these two areas, as well as to assert, without hesitancy in appropriate instances, the penalties that the Congress has provided." H. Rept. 98–861, *supra* at 239.

We also have stated in *Elliott v. Commissioner*, 84 T.C. 227, 248 (1985), that "At some point, the arguments in these highly leveraged tax avoidance (or evasion) schemes must be regarded as 'frivolous or groundless,'" citing section 6673. We have frequently found that cases based upon meritless contentions and stale arguments are burdensome both on this Court and upon society as a whole. See *Abrams v. Commissioner*, 82 T.C.

403 (1984). The time spent upon this case has delayed other cases of merit which could have provided new precedents to the tax system. Petitioners' brief, much like their abusive tax shelter "investment," was merely a prepackaged, pro forma presentation.

Upon review of this record, we find that petitioners' positions are frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. We admonish other petitioners and their counsel not to maintain frivolous proceedings before this Court or to maintain them primarily for delay. On respondent's motions, we award damages to the United States under section 6673 in the maximum amount of $5,000 as to petitioners in docket Nos. 12511–81 and 10961–82 and $5,000 as to petitioners in docket No. 12512–81.

To reflect the foregoing,

*Appropriate orders will be entered on the respondent's motions for damages, and decisions will be entered for the respondent.*