MARVIN ADELBERG and HELEN M. ADELBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adelberg v. Commissioner
Docket No. 15391-84.
United States Tax Court
T.C. Memo 1985-597; 1985 Tax Ct. Memo LEXIS 30; 51 T.C.M. (CCH) 65; T.C.M. (RIA) 85597; December 10, 1985. *30 Ps claimed deductions for advanced minimum royalties paid to Wyoming and Western Coal Reserves Inc., which had been held to be nondeductible in various cases, including Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); and Wing v. Commissioner,81 T.C. 17 (1983). Ps ignored the Commissioner's settlement offer until subsequent to filing a petition herein and, only after the case was set for trial, claimed that a binding settlement agreement was reached or that the Commissioner was estopped to withdraw the settlement offer.Held, after the petition was filed, no settlement offer was extant. Philip R. Linsley, for the petitioners. John O. Kent, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $261,416 and $336,349 in petitioners' Federal income taxes for 1977 and 1978, respectively. Petitioners concede that they are not entitled to the deductions claimed on their returns for advanced minimum royalties. They claim, however, that they are entitled to enforce an agreement whereby they would be allowed to deduct payments made in each year in the sum of $135,000, or $270,000 for both years. FINDINGS OF FACT Petitioners were residents of Encino, California, at the time they filed their petition herein. They filed joint individual income tax returns for 1977 and 1978. On a schedule C attached to each *32 return, in each year they claimed as a deduction royalty expenses of $540,000. Those deductions were based on petitioners' purchase of a lease of coal bearing property. In connection with such purchase, petitioners paid to Wyoming and Western Coal Reserves Inc. (Wyoming and Western) $135,000 in November 1977 and $135,000 in March 1978. The Wyoming and Western program was promoted by Joseph R. Laird (Laird). In 1976, petitioners had invested in another coal program promoted by Laird and known as Frazer Co. II. On October 30, 1981, the Commissioner of Internal Revenue made a speech in which he categorized certain types of tax shelters. One category was referred to as "settlement vehicles," in which the Appeals Division of the Internal Revenue Service would use normal settlement procedures. The Commissioner also stated: This new flexibility does mean that we'll be using our resources where they'll be most effective. A reduced Tax Court backlog and a realistic expectation that a case will go to trial will be a real deterrent. Moreover, we hope soon to convince taxpayers that a petition in the Tax Court will not result in a better settlement. Thereafter the Wyoming *33 and Western program was categorized as a "settlement vehicle," and the Commissioner began offering to the participants a deduction of all cash payments made in connection with the investment, to be taken entirely in the first year of participation in the program. In or about March 1983, petitioners retained the services of Gary S. Vandeweghe (Vandeweghe), an experienced tax lawyer who had represented other taxpayers in regard to tax shelter programs promoted by Laird and was aware that the Commissioner had extended settlement offers to investors in those programs, including petitioners.On May 20, 1983, the Commissioner mailed to petitioners a letter in the format commonly referred to as a "30-day letter." That letter referred to prior administrative offers to settle petitioners' 1977 and 1978 tax liability on the basis of allowing out-of-pocket expenses as a deduction in the initial year of investment and stated that petitioners had not accepted those offers. The letter enclosed a report proposing adjustments based on disallowance of all losses claimed in relation to the Wyoming and Western program in 1977 and 1978 and another minor adjustment for 1978. The letter gave petitioners *34 30 days in which to protest the proposed adjustments. On May 25, 1983, petitioners forwarded the said letter to Vandeweghe and asked that he prepare an appropriate response. On June 15, 1983, Vandeweghe sent a protest in a response to the 30-day letter dated May 20, 1983. In that protest, Vandeweghe took the position that the amounts claimed by petitioners in relation to the Wyoming and Western program for 1977 and 1978 were deductible, either pursuant to section 1.612-3(b)(3), Income Tax Regs., or in the alternative, because the regulation was invalid as applied to the years in issue. On or about June 28, 1983, respondent mailed to petitioners a statutory notice of deficiency with respect to the year 1976. On or about August 31, 1983, Vandeweghe filed a petition with respect to the year 1976, which was filed as docket No. 26700-83. On July 29, 1983, Marcia Hamm, an appeals officer for the Internal Revenue Service, wrote a letter to Vandeweghe with respect to petitioners' liability for 1977 and 1978. That letter offered a loss deduction to the extent of the actual cash investment and stated: To compute a proper basis for this proposed settlement for "out-of-pocket" expense, *35 please forward a copy of any subsequently filed returns indicating deductions relating to your investment in question. On September 20, 1983, Hamm sent a follow-up letter to Vandeweghe, which was corrected on September 23, 1983, to read as follows: In our recent correspondence, I discussed the possibility of settling your case based on your cash investment in the shelter named above. In regard to this settlement offer, please review the enclosed Tax Court case, in which a Cal Am promoted Wyoming and Western coal tax shelter was at issue. As you will note the decision was favorable to the Government. In light of the above, I am once again proposing this settlement. If you wish to accept this offer please supply verification of your cash investment. I must have your response within 45 days from the date shown above. Hamm's letter enclosed a copy of the opinion in Walls v. Commissioner,T.C. Memo. 1983-504, in which we granted partial summary judgment against taxpayers on issues identical to those raised in Vandeweghe's protest of June 1983. On September 26, 1983, Vandeweghe forwarded the September 23 letter to petitioners with a letter stating: Enclosed *36 please find a letter from the IRS, again offering to settle your Tax Court case for your cash investment, specifically based on the result in the Walls case. We should plan to discuss this when we get together in Los Angeles. At a meeting between Vandeweghe and petitioner Marvin Adelberg in October 1983, it was decided that petitioners would not accept the settlement offer contained in the September 23, 1983 letter. On November 21, 1983, the Internal Revenue Service, notwithstanding the filing of a petition regarding 1976, made an assessment for the year 1976 of $161,284 in tax and $130,264.19 in interest to that date, or a total of $291,548.19. Therafter a revenue officer attempted to contact petitioners with regard to collection of that amount. On January 6, 1984, counsel for respondent in docket No. 26700-83 sent a letter to Vandeweghe in which he stated that the issue involved in docket No. 26700-83 was being litigated by another taxpayer and that petitioners might join in a stipulation to be bound by the results in the other case; the letter enclosed a proposed stipulation. On January 24, 1984, Vandeweghe wrote a letter to counsel for respondent in docket No. *37 26700-83, stating the following: Mr. Adelberg called me today to advise that as a result of a mistake, he missed a registered letter from the Internal Revenue Service.Would you be kind enough to inquire and ask the sender to re-send the letter so that we can pick it up? It might be a Notice of Deficiency for 1977-1978, since those years were under consideration by the Los Angeles Appeals Office. Copies of that letter were sent to Hamm and to petitioners. On February 24, 1984, respondent sent to petitioners the statutory notice with respect to 1977 and 1978. That notice was forwarded by petitioners to Vandeweghe on February 28, 1984. Vandeweghe acknowledged receipt of the notice of deficiency on March 12, 1984, and the petition herein was filed on May 24, 1984. In the petition, petitioners contend that they are entitled to the deductions claimed on their return for 1977 and 1978, under section 1.612-3(b), Income Tax Regs., or because the regulation is invalid as applied to the years in issue. On June 5, 1984, Greg Habib, an Appeals Officer of the Internal Revenue Service, called Vandeweghe and offered to settle docket No. 26700-83 on the basis of a deduction for out-of-pocket *38 payments made by petitioners. On July 16, 1984, Vandeweghe wrote to Habib stating that petitioners would respond to that offer soon after they returned to the country in late July. In that letter Vandeweghe also stated "Mr. Adelberg also inquired as to whether you are also involved with his 1977 and 1978 Coal Program issues." On August 16, 1984, Habib wrote a letter to Vandeweghe with respect to docket No. 26700-83, requesting that petitioners notify him within 30 days if they agreed to the settlement offer and requesting verification of their cash investment. That letter stated: If your clients reject this offer or fail to respond within 30 days, this offer will be withdrawn. We will conclude that your clients have elected to litigate your case, and the United States Tax Court will be so notified. On September 7, 1984, Vandeweghe wrote to petitioners as follows: This will confirm our telephone conversation that we will take all steps possible to settle 1976, and 1977-78 within the time limits imposed in the IRS' letter dated August 16, 1984, and on the basis set forth therein. In addition, as soon as such a settlement has been reached, we will confirm it to you. Since *39 our telephone conversation, I have spoken to the IRS agent and made the settlement arrangement, and we are now obligated to provide him with copies of your checks for the investments in those three years. Please let me know if you will not be able to send me those copies within the next week or so. Subsequent to Hamm's letter dated September 23, 1983, no other settlement offer was made to petitioners or to their representative with respect to the 1977 and 1978 tax liabilities. Vandeweghe was under the impression, conveyed to petitioners, that the out-of-pocket settlement offer could be accepted at any time. At no time prior to August 1984 did petitioners attempt to accept the settlement offer with respect to 1977 and 1978. In September 1984 Habib told Vandeweghe that Habib had no authority with respect to 1977 and 1978 and that the prior offer was no longer available with respect to those years. In a telephone conversation between Philip R. Linsley, new counsel for petitioners, and Habib on October 1, 1984, Linsley stated that petitioners would accept the cash out-of-pocket offer if the offer was still available. Linsley thereafter advised petitioners that it was too late *40 to accept the offer. The 1976 case was settled on the basis of Habib's offer. On October 29, 1984, Linsley filed an Entry of Appearance on behalf of petitioners herein. On November 2, 1984, Vandeweghe filed a Motion to Withdraw as Counsel. Said Motion was granted. On June 3, 1985, respondent served on petitioners Request for Admissions concerning the investment at issue herein. No. response to the Request for Admissions was filed by petitioners. By Notice served July 1985, this case was set for trial in Los Angeles on December 9, 1985. Thereafter, on request of the petitioners, the case was advanced to September 9, 1985. On September 9, 1985, petitioners filed a Motion to Amend Petition, in which they alleged that in August and September 1984, petitioners, through Vandeweghe, accepted the out-of-pocket settlement offer and that the settlement was therefore binding. At no time prior to September 1985 did petitioners advise the Court of their contentions concerning the settlement or that they conceded that they were not entitled to deduct the advanced royalties claimed on their returns. OPINION Another event is pertinent to the foregoing chronology: On June 4, 1985, an *41 opinion was filed in the case of Oneal v. Commissioner,84 T.C. 1235 (1985), in which Vandeweghe represented taxpayers who were investors during 1977 and 1978 in the Wyoming and Western program. In that opinion, we found that the arguments made by the investors lacked merit and had repeatedly been rejected in cases such as Wing v. Commissioner,81 T.C. 17 (1983), and Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). Moreover, we awarded damages under section 6673 [1] against each of the taxpayers in Oneal, stating: Upon review of this record, we find that petitioners' positions are frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. We admonish other petitioners and their counsel not to maintain frivolous proceedings before this Court or to maintain them primarily for delay. * * * [84 T.C. at 1244.]
*42 For approximately a year, petitioners ignored the express termination date set forth in respondent's offer. They filed a petition in this Court asking us to determine that they were entitled to the full amounts claimed for advanced minimum royalties, although we had previously and repeatedly denied such deductions in the same or similar programs, and, as far as the Court was concerned, they pursued those claims until the date on which the cases were set for trial. To describe petitioners' contentions is to show that they must be rejected. One of the most elementary principles of the law of contracts is that an offer terminates upon expiration of the time stated in the offer, upon revocation, or upon rejection. If no duration is stated in the offer, and it is not revoked or rejected, acceptance must be within a reasonable time. The parties both acknowledge these principles, but they disagree as to the application of them to the facts of this case. Petitioners contend that the 45-day period specified in Hamm's letter of September 1983 was meaningless because such a limitation had been ignored in other cases known to Vandeweghe and because the language of the September 1983 letter *43 was vague, ambiguous, and imprecise, particularly in contrast to Habib's letter of August 1984. They contend that a binding agreement was entered into in a conversation between Habib and Vandeweghe in September 1984, which was timely because a reasonable time for expiration of the offer was 1 year. They further contend that respondent should be estopped to deny the settlement agreement. Respondent contends that the settlement offer was not available for petitioners to accept after any one of the following events: (1) lapse of the offer within the specified 45-day period identified in the September 1983 letter; or (2) lapse of the offer within a reasonable time and revocation by the notice of deficiency sent February 24, 1984; or (3) rejection of the offer on May 24, 1984, upon the filing of the petition requesting the Court to allow the full amount of deductions claimed by petitioners on their tax returns for 1977 and 1978. Petitioners' arguments are not supported by the facts. The September 1983 letter was not ambiguous, and neither Vandeweghe nor petitioners could have been confused upon receipt of that letter by different language in a letter not received until August 1984. *44 The difference between the letters is explained in part by the fact that the later letter dealt with a Tax Court case pending, and a definite immediate reply was needed so that the Court could be advised of the status of the case. Moreover, the fact that a particular concept may be articulated more clearly does not vitiate the effect of an otherwise clear statement. Vandeweghe testified that in his experience respondent's offers were open indefinitely. When asked whether, at the time of his conversation with Habib approximately a year later, it was his understanding that the offer in the September 23, 1983, letter was still available, he stated: Well, I'd have a hard time answering that question unequivocally yes, and the reasons is that there had been a regular set -- series of activities in both Dr. Adelberg's cases involving out-of-pocket settlements and to narrow down and say that this particular letter was still the operative letter in the 1977-78 case would be more narrow that I would really like to testify. In the 1977 case I first received a letter from Ms. Hamm, who wrote this letter, maybe four -- three or four months before, talking about an out-of-pocket settlement. *45 Then I received the two letters that -- this being the second of the two letters, in September 1983. In Dr. Adelberg's 1976 case, I received a phone call from Mr. Habib in June, a follow-up letter in August. Once again, in context I had quite a few cases that were in various stages before the IRS and the Tax Court, and that were being settled, so to say narrowly that this letter was still extant, that I wouldn't like to say; but to say that 1977 and '78 cases, including Dr. Adleberg's, were being settled, the answer is yes. * * * As a matter of fact, Dr. Adelberg's case was the first time in my experience that the Internal Revenue Service said, "We are no longer settling cases on the basis that a settlement offer had been made, expired, and is not going to be renewed." That's the first time that I had heard that. Petitioners have pointed to nothing, however, that in any way prevents the Commissioner from taking the position that an offer had expired and would not be renewed. The Commissioner's speech in 1981 made it clear that filing a petition in the Tax Court was not expected to improve the chances of settlement. The Commissioner's statement or procedure in Rev. Proc. 82-42, 1982-2 C.B. 761, *46 also released as a news release on June 25, 1982, gave notice, particularly to experienced tax counsel like Vandeweghe, that authority to settle docketed cases such as this one, where a statutory notice had been sent by the Appeals Division, was in counsel for respondent. Moreover, the evidence negates any actual agreement in 1984 to settle. According to their testimony, Habib told Vandeweghe that he did not have the 1977 and 1978 administrative files at the time that Vandeweghe called to accept the settlement offer with respect to 1976. Habib later advised Vandeweghe that he did not have authority to settle with respect to 1977 and 1978 and that the matter was in the hands of respondent's counsel. At no time did Habib purport to extend to petitioners an offer with respect to 1977 and 1978. When petitioners employed new counsel, he advised them that it was too late to accept the offer with respect to 1977 and 1978. Vandeweghe admitted during trial that he knew that the probable result of ignoring the administrative settlement offer was that a statutory notice would be sent with respect to the years 1977 and 1978. There was no reason in fact or law why respondent could not revoke *47 the offer at any time, even within the 45-day period originally specified. Revocation could be accomplished without using that express term by any statement or conduct clearly implying an unwillingness to contract according to the terms of the original offer. See 1 Williston on Contracts, section 55, pages 176-178 (3d ed. 1957). Thus, even if the 45-day period specified in the letter were a nullity and could be ignored, the offer could not be accepted after it had been revoked in February 1984 by the statutory notice that disallowed all deductions and made no reference to the prior offer. That statutory notice was a significant event in that it called into play a totally different allocation of authority within the Commissioner's office and created the predicate for involvement by this Court. When petitioners filed their petition in May 1984, they alleged that they were entitled to the full amount of the deductions claimed on the returns and made no reference to the purported settlement agreement. Thus, they did not believe that they had any such agreement and, if they believed that the offer was still open, they rejected it. Any private, unexpressed intent to secure a cash *48 out-of-pocket settlement was thereafter a matter of hope and not right. Petitioners also rely on the doctrine of equitable estoppel. They argue that respondent somehow confused them by the series of communications relating to the different tax years and mislead them into believing that the offer would be open at any time. The facts negate any such conduct by respondent and show that petitioners relied only on their counsel, who made a mistake in strategy. It is unreasonable to expect that an offer of settlement would remain open indefinitely after respondent had secured a series of victories involving the same or substantially the same program. It is even more unreasonable to expect the Court to enforce such an agreement and indirectly give to petitioners deductions that we have repeatedly denied to other taxpayers similarly situated. Cf. Adams v. Commissioner,85 T.C. 359 (1985). Petitioners invoked the jurisdiction of the Court and let this case proceed to trial, causing all of the effort and expense incident to placing it on a trial session. They otherwise did many of the same things that have led to the imposition of damages under section 6673 in other *49 cases. We find no misrepresentation by respondent here, whether intentional or negligent, no misleading silence, and no justifiable or reasonable reliance by petitioners. See Hudock v. Commissioner,65 T.C. 351, 363 (1975); see also Schuster v. Commissioner,312 F.2d 311 (9th Cir. 1962); Estate of Emerson v. Commissioner,67 T.C. 612, 617-618 (1977). We find none of the factors giving rise to equitable estoppel present in this case.See generally Boulez v. Commissioner,76 T.C. 209 (1981). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩