DAISHO D. MIYAGAWA AND EMIKO A. MIYAGAWA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miyagawa v. Commissioner
Docket No. 4644-83.
United States Tax Court
T.C. Memo 1986-19; 1986 Tax Ct. Memo LEXIS 588; 51 T.C.M. (CCH) 284; T.C.M. (RIA) 86019; January 15, 1986. John Patrick Kelly, for the petitioners. John O. Kent, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: With respect to petitioners' 1977 Federal income tax, respondent determined a deficiency of $15,814.00 and an addition to tax of $790.70 under section 6653(a). [1]
The issues are (1) whether petitioners may deduct certain claimed "advanced minimum royalties" under section 1.612-3(b)(3), Income Tax Regs., (2) whether petitioners are liable for an addition to tax under section 6653(a), and (3) whether damages should be awarded under section 6673. The facts have been fully stipulated and are so found. Petitioners, Daisho D. Miyagawa and Emiko A. Miyagawa, resided in Playa Del Rey, Calif., when they filed their petition herein. *590 Petitioners timely filed a joint Federal income tax return for 1977 on which they listed their respective occupations as "Correctional Counselor" and "Fashion Designer." This case grows out of petitioners' involvement in a now familiar coal lease tax shelter involving "minimum annual royalty payments," most of which may be paid by means of nonrecourse notes which are exclusively payable from mining receipts. [2]
*591 During November 1977, petitioners entered into a "Mining Lease" with Cambridge Corporation (herein, "Cambridge"). Under this lease, which was actually a sublease, petitioners were entitled to mine all of the economically recoverable coal at a specific location in Wyoming for a period of 5 years plus the remainder of 1977. Petitioners agreed to pay Cambridge a lease deposit of $100.00 and a royalty of $2.50 per net ton of the initial $24,000 tons of cal sold or mined, removed and marketed. petitioners further agreed to pay Cambridge a minimum annual royalty payment of $24,000.00. The minimum royalty payment was to be recoverable out of the amount received from coal sold or mined, removed and marketed. The lease provided that in the event petitioners sold coal in place by means of a carved out production payment or otherwise, they would be obligated to pay a royalty to Cambridge to the same extent as if coal had been mined removed and marketed. Petitioners and Cambridge also executed an "Addendum to Mining Lease," under which petitioners, as lessees, were given the option of paying the minimum annual royalty payments due on December 31, 1978 and thereafter either in cash or by nonrecourse *592 note. If payment by nonrecourse note was desired, petitioners were to pay Cambridge from all coal mined from the leased premises in excess of the initial 15,600 tons. Petitioners also entered into a "Contract for the Sale of Coal" with Poly-Tex International Inc. (herein, "Poly-Tex"), under which they purported to sell 15,600 tons of economically recoverable coal reserves to Poly-Tex at $3.50 per ton, for a total purchase price of $54,600.00. Of this amount, $27,000.00 was to be paid in cash, while the remaining $27,600.00 was evidenced by a promissory note payable on or before December 31, 1978. This sale was said to constitute the creation of a "carved out production payment." During 1977, petitioners paid $12,000.00 to Cambridge by check, and also transferred to Cambridge an additional $27,000.00, representing the proceeds of the sale of coal to Poly-Tex, pursuant to an "Authorization to Negotiate." No coal was produced during 1977 on the property leased by petitioners. On their 1977 joint Federal income tax return, petitioners claimed a deduction of $39,000.00 for royalties in respect of the Cambridge lease. [3] In his notice of deficiency, respondent disallowed petitioners' *593 claimed royalty deduction in full. The first issue is whether petitioners are entitled to a deduction for royalties during the year in issue. [4] Under section 1.612-3(b)(3), Income Tax Regs., if no mineral product is produced during a given year, no deduction for royalties is allowed for that year unless the royalties are paid or accrued as a result of a minimum royalty provision. [5] In the instant case, since no coal was produced during 1977 on the property leased by petitioners, the royalties in issue are deductible only if paid as a result of a minimum royalty provision. Under the regulation, a minimum royalty provision is one which requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years. *594 Respondent contends that the amount claimed by petitioners as a deduction for royalties was not paid as a result of a minimum royalty provision with the meaning of section 1.612-3(b)(3), Income Tax Regs. In support of his position, respondent relies upon the terms of the "Addendum to Mining Lease" which allows petitioners to make each minimum annual royalty payment due December 31, 1978 and thereafter by means of a nonrecourse note. Under the terms of the nonrecourse note, payment would only be made from all coal mined in excess of the initial 15,600 tons. Petitioners argue that the claimed royalties were paid as a result of a minimum royalty provision. Alternatively, they assert that section 1.612-3(b)(3), Income Tax Regs., is invalid. This Court has considered the issue raised herein in a number of cases involving substantially identical facts, most recently in Oneal v. Commissioner,84 T.C. 1235 (1985). All of the transactional documents executed by petitioners herein, including the "Mining Lease," the "Addendum to Mining Lease," the "Non-Recourse Promissory Note," the "Authorization to Negotiate," and the "Contract for the Sale of Coal," are substantially *595 similar to those executed by the taxpayers in Oneal v. Commissioner,supra.The only differences are the amounts involved and certain minor variations in detail. In Oneal, we sustained respondent's disallowance of the taxpayers' claimed royalty deductions. Consistent with our prior opinions involving substantially similar facts, [6] we held that where, as here, future royalty payments may be made by means of a nonrecourse note which is payable only in the event of mineral production, any royalties paid will not be considered to have been paid pursuant to a provision which requires that a substantially uniform amount of royalties be paid each year of the lease, and accordingly, will not be considered to have been paid as a result of a minimum royalty provision with the meaning of section 1.612-3(b)(3), Income Tax Regs. Our holding in Oneal v. Commissioner,supra, and the cases therein cited, is controlling on this point. Thus, for the reasons discussed in those cases, we hold that since no coal was produced during 1977 on the property leased by petitioners and since petitioners did not pay royalties as a result of a minimum royalty provision, *596 petitioners' claimed royalty deduction is not allowable under section 1.612-3(b)(3), Income Tax Regs.
Petitioners contest the validity of section 1.612-3(b)(3), Income Tax Regs., notwithstanding that this Court and two circuit courts of appeal have upheld the validity of the regulation. See Wendland v. Commissioner,739 F.2d 580 (11th Cir. 1984); Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); Wing v. Commissioner,81 T.C. 17 (1983); Wendland v. Commissioner,79 T.C. 355 (1982). Each of the arguments raised by petitioners on this point has previously been addressed and rejected by this Court, most recently in Oneal v. Commissioner,supra, in which we again upheld the validity of section 1.612-3(b)(3), Income Tax Regs. See Oneal v. Commissioner,supra at 1239, and cases cited therein. In view of the foregoing, we dismiss petitioners' arguments concerning the validity of section 1.612-3(b)(3), Income *597 Tax Regs., and hold thereunder that petitioners' claimed deduction for royalties is not allowable. We thus hold for respondent on this issue. The second issue is whether petitioners are liable for an addition to tax under section 6653(a). That provision imposes an addition to tax equal to 5 percent of the underpayment if any part thereof is due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proof on this issue. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioners' position is clearly contrary to the express terms of section 1.612-3(b)(3), Income Tax Regs., and we consider the underpayment in this case to have been due at least to negligence, if not intentional disregard of that regulation. In any event, petitioners have failed to address this issue, and thus have not carried their burden of proof with respect thereto. Accordingly, we sustain the imposition of this addition to tax as determined in the notice of deficiency. The final issue is whether damages should be awarded under section 6673. Under that section, as applicable herein, the Court may award damages to the United States of up to $5,000.00 *598 when the proceeding has been instituted or maintained by the taxpayer primarily for delay or if the taxpayer's position in such proceeding is frivolous or groundless. We conclude that the award of damages is appropriate in this case since, on this record, we find that petitioners' position is frivolous and groundless and that these proceedings have been maintained by petitioners primarily for delay. Prior to the submission of this case for our consideration, this Court had considered the deductibility of royalty payments on facts substantially identical to those presented herein. See Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra. In each of these cases, we held that the claimed royalties were not deductible. Moreover, petitioners raise the same issues concerning the validity of sec. 1.612-3(b)(3), Income Tax Regs., already decided adversely to them in Wendland v. Commissioner,supra; Redhouse v. Commissioner,supra;Wing v. Commissioner,supra;Ward v. Commissioner,supra; and Walls v. Commissioner,supra. *599 Prior to the submission of this case, the Court of Appeals for the Ninth Circuit (to which the instant case is appealable) had already affirmed our decision in Wendland v. Commissioner (sub nom. Redhouse v. Commissioner), and the Eleventh Circuit had also done so. Petitioners were thus given adequate notice regarding similar cases involving substantially identical facts and were provided notice of the law of the circuit to which their case is appealable. Notwithstanding the well-established precedent, petitioners have persisted in maintaining these proceedings, but have presented us with no new or meritorious uarguments to distinguish their case from those previously decided. [7] In Oneal v. Commissioner,supra, we awarded damages to the United States in the amount of $10,000.00 ($5,000.00 as to taxpayers Oneal and $5,000.00 as to taxpayers Lund) and admonished other taxpayers and their counsel not to maintain similar proceedings before this Court. We deem it appropriate to similarly award damages here since petitioners' case is essentially indistinguishable from that case. Accordingly, on respondent's motion, damages in the amount of $5,000.00 will *600 be awarded to the United States under section 6673. To reflect the foregoing, An appropriate order will be entered on respondent's motion for damages, and decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Except for differences in the amounts "invested," and minor variations in detail, the facts of this case are substantially similar to those in Oneal v. Commissioner,84 T.C. 1235 (1985), as well as other cases involving coal mining leases. See King v. Commissioner,T.C. Memo. 1985-340; see also Lund v. Commissioner,T.C. Memo. 1985-342; Kaji v. Commissioner,T.C. Memo. 1985-341; Rosebrough v. Commissioner,T.C. Memo. 1985-339; Ward v. Commissioner,T.C. Memo. 1984-570 on appeal (9th Cir., Jan. 14, 1985); Thompson v. Commissioner,T.C. Memo. 1984-337; Walls v. Commissioner,T.C. Memo. 1983-504; Nichols v. Commissioner,T.C. Memo. 1985-338↩.
3. Of the $39,000.00 amount, petitioners characterize $24,000.00 as payment of a minimum annual royalty and the remaining $15,000.00 as payment of their obligation under the mining lease to pay Cambridge a royalty payment to the same extent as if coal had been mined, removed and marketed, in the event they sold coal in place.↩
4. In their petition herein, petitioners sought an award of attorneys' fees. Given our disposition of this case, it is clear that any claim by petitioners for attorneys' fees is wholly lacking in merit. See sec. 7430. Moreover, Rule 34(b) provides that a claim for reasonable litigation costs shall not be included in the petition in a deficiency action. See also Rule 231. We thus do not consider any such issue to be properly before us. In their petition, petitioners also asserted that the assessment and collection of tax for 1977 is barred by the statute of limitations. However, we assume that they have abandoned this contention, since they have presented no evidence with respect thereto, nor have they argued it on brief. Moreover, the parties have attached to the stipulation of facts a copy of Form 872, dated August 29, 1980, by which petitioners agreed pursuant to sec. 6501(c)(4) to extend the time for assessment of their 1977 Federal income tax to December 31, 1982, and a copy of a U.S. Postal Service Form 3877 dated December 30, 1982, indicating that the notice of deficiency upon which this case was based was sent to petitioners by certified mail on December 30, 1982. It would thus appear that the notice of deficiency, dated December 30, 1982, was timely issued prior to the expiration of the statute of limitations as thus extended, and that assessment and collection of the tax for 1977 is not barred thereby. See secs. 6501(a), 6501(c)(4), 6503(a). ↩
5. Sec. 1.612-3(b)(3), Income Tax Regs., provides in relevant part as follows: The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount.↩ For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * [Emphasis added.]
6. See Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra.↩
7. We note that the brief submitted by petitioners in this case appear to be a prepackaged, pro forma presentation substantially identical to those briefs filed by taxpayers in other cases involving coal lease tax shelters, most notably Wyoming and Western Coal Reserves, Inc. In fact, petitioners' brief erroneously asks us to find as a fact that petitioners "entered into a coal lease with Wyoming and Western Coal Reserves, Inc." Cf. Oneal v. Commissioner,supra↩ at 1244. Among the promotional documents concerning these coal lease tax shelters is a letter from Joseph R. Laird, Jr., attorney at law, who is president of both Cambridge Corporation and Wyoming and Western Coal Reserves, Inc. Therein, Laird personally guarantees that legal representation will be provided to "investors" such as petitioners in this case in the event the Internal Revenue Service attacks the proposed tax treatment.