ROBERT L. ROTH AND ALBERTA MAE ROTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roth v. Commissioner
Docket Nos. 3750-82, 16071-83.
United States Tax Court
T.C. Memo 1986-20; 1986 Tax Ct. Memo LEXIS 589; 51 T.C.M. (CCH) 287; T.C.M. (RIA) 86020; January 15, 1986. John Patrick Kelly, for the petitioners. *590 John O. Kent, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies of $14,734 and $26,646 in petitioners' 1977 and 1978 Federal income tax, respectively. After concessions, the issues in these consolidated cases are (1) whether petitioners may deduct in 1977 and 1978 certain claimed "advanced minimum royalties" under section 1.612-3(b)(3), Income Tax Regs., and (2) whether damages should be awarded under section 6673. [1]
These cases were presented on the basis of a stipulation of facts and respondent's unopposed request for admissions. Petitioners, Robert L. Roth and Alberta Mae Roth, resided in California when they filed their petitions herein. [2]
Petitioners filed joint Federal income tax returns for 1977 *591 and 1978, on which they listed their respective occupations as "Physician" and "Housewife." This case grows out of petitioner Robert L. Roth's involvement in a now familiar coal lease tax shelter involving "minimum annual royalty payments," most of which may be paid by means of nonrecourse notes which are exclusively payable from mining receipts. [3]
During November 1977, petitioner Robert L. Roth (herein "petitioner") entered into *592 a "Mining Lease" with Wyoming and Western Coal Reserves, Inc. (herein, "Wyoming and Western"). Under this lease, which was actually a sublease, petitioner was entitled to mine all of the economically recoverable coal at a specific location in Colorado for a period of 10 years plus the remainder of 1977. Petitioner agreed to pay Wyoming and Western a minimum annual royalty payment of $45,000. The minimum royalty payment was to be recoverable out of the amount received from coal sold or mined, removed and marketed. In addition to the mining lease, petitioner and Wyoming and Western also entered into an "Addendum to Mining Lease" under which petitioner, as lessee, was given the option of paying the minimum annual royalty payments due on December 31, 1979 and thereafter either in cash or by nonrecourse note. If payment by nonrecourse note was desired, petitioner was to pay Wyoming and Western from all coal mined from the leased premises in excess of the initial 60,000 tons. Petitioner also entered into a "Contract for the Sale of Coal" with Coal and Minerals Leasing and Development Corporation (herein, "Coal and Minerals Leasing"), under which he purported to sell 60,000 tons of coal *593 to Coal and Minerals Leasing at $2.50 per ton for a total purchase price of $150,000.Under this contract, payment of the total purchase price was to be due on December 31, 1987, although Coal and Minerals Leasing could extend this payment date to December 31, 1997 by agreeing to pay interest at a rate of ten percent per annum on the unpaid portion thereof. Any payment prior to the payment date of either the purchase price or any interest due thereon was to be made exclusively from receipts of coal mined and marketed by Coal and Minerals Leasing. During 1977, petitioner paid by check one quarter ($11,250) of the 1977 minimum annual royalty due to Wyoming and Western and borrowed the remainder ($33,750) from Coal and Minerals Leasing by executing a nonrecourse promissory note. [4] By its terms, this note also covered any further amounts which Coal and Minerals Leasing might lend to petitioner in 1978. During 1978, petitioner paid by check $6,911.52 toward the 1978 minimum annual royalty due to Wyoming and Western, and borrowed an additional $33,750 from Coal and Minerals Leasing. Funds issued by Coal and Minerals Leasing to petitioner were negotiated by him to Wyoming and Western *594 pursuant to an "Authorization to Negotiate." With respect to royalties payable under the mining lease for 1979, 1980, and 1981 petitioner elected, in accordance with the addendum, to execute separate nonrecourse notes payable to Wyoming and Western, each in the amount of $45,000. No coal was produced in 1977 or 1978 on the property leased by petitioner. On their 1977 Federal income tax return, petitioners claimed a deduction of $45,000 for royalties in respect of the Wyoming and Western lease. On their 1978 return, the royalty deduction claimed was $40,213. [5] In his notices of deficiency, respondent disallowed petitioners' claimed royalty deductions in full. *595 The first issue is whether petitioners are entitled to deductions for royalties during the years in issue. [6] Under section 1.612-3(b)(3), Income Tax Regs., if no mineral product is produced during a given year, no deductions for royalties are allowed for that year unless the royalties are paid or accrued as a result of a minimum royalty provision. [7] In the instant case, since no coal was produced during either 1977 or 1978 on the property leased by petitioner, the royalties in issue are deductible only if paid as a result of a minimum royalty provision. Under the regulation, a minimum royalty provision is one which requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years. *596 Respondent contends that amounts claimed by petitioners as deductions for royalties were not paid as a result of a minimum royalty provision within the meaning of section 1.612-3(b)(3), Income Tax Regs. In support of his position, respondent relies upon the terms of the "Addendum to Mining Lease" which allows petitioner to make each minimum annual royalty payment due December 31, 1979 and thereafter by means of a nonrecourse note. Under the terms of the nonrecourse note, payment would only be made from all coal mined in excess of the initial 60,000 tons. Petitioners argue that the claimed royalties were paid as a result of a minimum royalty provision. Alternatively, they assert that section 1.612-3(b)(3), Income Tax Regs., is invalid. This Court has considered the issue raised herein in a number of cases involving substantially identical facts, most recently in Oneal v. Commissioner,84 T.C. 1235 (1985). All of the transactional documents executed by petitioner herein, including the "Mining Lease," the "Addendum to Mining Lease," the "Non-Recourse Promissory Note," the "Authorization to Negotiate," and the "Contract for the Sale of Coal," are essentially the *597 same as those executed by the taxpayers in Oneal v. Commissioner,supra and the cases cited therein involving Wyoming and Western and Coal and Minerals Leasing. The only material difference is the amount of money "invested" and the amount of deductions claimed with respect to the "leased" property. In Oneal, we sustained respondent's disallowance of the taxpayers' claimed royalty deductions. Consistent with our prior opinions involving substantially similar facts, [8] we held that where, as here, future royalty payments may be made by means of a nonrecourse note which is payable only in the event of mineral production, any royalties paid will not be considered to have been paid pursuant to a provision which requires that a substantially uniform amount of royalties be paid each year and thus will not be considered to have been paid as a result of a minimum royalty provision within the meaning of section 1.612-3(b)(3), Income Tax Regs. Our holding in Oneal v. Commissioner,supra, and the cases therein cited, is controlling on this point. Accordingly, for the reasons discussed in those cases, we hold that since no coal was produced during *598 1977 or 1978 on the property leased by petitioner and since petitioner did not pay royalties as a result of a minimum royalty provision, petitioners' claimed royalty deductions are not allowable under section 1.612-3(b)(3), Income Tax Regs.
Petitioners contest the validity of section 1.612-3(b)(3), Income Tax Regs., notwithstanding that this Court and two circuit courts of appeal have upheld the validity of the regulation. See Wendland v. Commissioner,739 F.2d 580 (11th Cir. 1984); Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); Wing v. Commissioner,81 T.C. 17 (1983); Wendland v. Commissioner,79 T.C. 355 (1982). Each of the arguments raised by petitioners on this point has previously been addressed and rejected by this Court, most recently in Oneal v. Commissioner,supra, in which we again upheld the validity of section 1.612-3(b)(3), Income Tax Regs. See Oneal v. Commissioner,supra at 1239, *599 and cases cited therein. In view of the foregoing, we dismiss petitioners' arguments concerning the validity of section 1.612-3(b)(3), Income Tax Regs., and hold thereunder that petitioners' claimed deductions for royalties are not allowable. We thus hold for respondent on this issue. The next issue is whether damages should be awarded under section 6673. Under that section, as applicable herein, the Court may award damages to the United States of up to $5,000 when the proceeding has been instituted or maintained by the taxpayer primarily for delay or if the taxpayer's position in such proceeding is frivolous or groundless. We conclude that the award of damages is appropriate in this case, since, on this record, we are satisfied that petitioners' position herein is frivolous and groundless and that these proceedings have been maintained by petitioners primarily for delay. Prior to the submission of these cases for our consideration, this Court had considered the deductibility of royalty payments on facts substantially identical to those presented herein. See Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra. *600 In each of these cases, we held that the claimed royalties were not deductible. Moreover, petitioners raise the same issues concerning the validity of sec. 1.612-3(b)(3), Income Tax Regs., already decided adversely to them in Wendland v. Commissioner,supra; Redhouse v. Commissioner,supra;Wing v. Commissioner,supra;Ward v. Commissioner,supra; and Walls v. Commissioner,supra.Prior to the submission of these cases, the Court of Appeals for the Ninth Circuit (to which the instant cases are appealable) had already affirmed our decision in Wendland v. Commissioner (sub nom. Redhouse v. Commissioner), and the Eleventh Circuit had also done so. Petitioners were thus given adequate notice regarding similar cases involving substantially identical facts and were provided notice of the law of the circuit to which their cases are appealable. Notwithstanding the well-established precedent, petitioners have persisted in maintaining these proceedings, but have presented us with no new or meritorious arguments to distinguish their cases from those previously decided. [9] In Oneal v. Commissioner,supra, *601 we awarded damages to the United States in the aggregate amount of $10,000, ($5,000 as to taxpayers Oneal and $5,000 as to taxpayers Lund), and admonished other taxpayers and their counsel not to maintain similar proceedings before this Court. We deem it appropriate to similarly award damages here since petitioners' cases are essentially indistinguishable from that case. Accordingly, on respondent's motion, damages in the aggregate amount of $5,000 will be awarded to the United States under section 6673, $2,500 in docket No. 3750-82 and $2,500 in docket No. 16071-83. To reflect concessions and the foregoing, Appropriate orders will be entered on respondent's motions for damages, and decisions will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners resided in Saratoga, California, when they filed the petition in docket No. 3750-82, and in San Jose, California, when they filed the petition in docket No. 16071-83.↩
3. Except for differences in the amounts "invested," the facts of this case are substantially identical to those in Oneal v. Commissioner,84 T.C. 1235 (1985), as well as other cases involving coal mining leases with Wyoming and Western Coal Reserves, Inc., see, e.g., Lund v. Commissioner,T.C. Memo. 1985-342; Kaji v. Commissioner,T.C. Memo. 1985-341; Rosebrough v. Commissioner,T.C. Memo. 1985-339; Nichols v. Commissioner,T.C. Memo. 1985-338; Ward v. Commissioner,T.C. Memo. 1984-570 (on appeal 9th Cir., Jan. 14, 1985); Thompson v. Commissioner,T.C. Memo. 1984-337; and Walls v. Commissioner,T.C. Memo. 1983-504↩.
4. Petitioner borrowed a total of $34,750 from Coal and Minerals Leasing during 1977. Presumably, the extra $1,000 represented a lease deposit in that amount which was payable in that year under the Mining Lease to Wyoming and Western.↩
5. For 1978, the amount of petitioner's checks ($6,911.52) and the amount borrowed from Coal and Minerals Leasing ($33,750) totalled $40,661.52. Petitioners deducted this amount on Schedule C of their 1978 Federal income tax return by characterizing $40,213 as a royalty and $448 as interest. Petitioners concede they are not entitled to a deduction for interest.↩
6. In their petitions herein, petitioners sought an award of attorneys' fees. Given our disposition of these cases, it is clear that any claim by petitioners for attorneys' fees is wholly lacking in merit. See sec. 7430. Moreover, Rule 34(b) provides that a claim for reasonable litigation costs shall not be included in the petition in a deficiency action. See also Rule 231. We thus do not consider any such issue to be properly before us. In their petition in docket No. 16071-83, petitioners asserted that the assessment and collection of tax for 1977 is barred by the statute of limitations. However, we assume that they have abandoned this contention, since they have presented no evidence with respect thereto, nor have they argued it on brief. Furthermore, in his Request for Admissions filed herein on May 24, 1984, respondent requested petitioners to admit, inter alia, that they validly agreed with respondent in writing pursuant to sec. 6501(c)(4) to extend the time for assessment of their 1977 tax, and that the notice of deficiency was timely mailed to petitioners prior to the expiration of the limitations period as thus extended. By failing to respond to respondent's Request for Admissions, petitioners are deemed to have admitted the matters therein. See Rule 90(c). Freedson v. Commissioner,65 T.C. 333↩ (1975). 7. Sec. 1.612-3(b)(3), Income Tax Regs., provides in relevant part as follows: The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount.↩ For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * [Emphasis added.]
8. See Ward v. Commissioner,supra;Thompson v. Commissioner,supra; and Walls v. Commissioner,supra.↩ See also footnote 3.
9. We note that the brief submitted by petitioners in these cases appears to be a prepackaged, pro forma presentation substantially identical to those briefs filed in other cases involving Wyoming and Western. Cf. Oneal v. Commissioner,supra↩ at 1244.